764 P.2d 346

The STATE of Arizona, Appellant,

v.

Michael Sean KILLIAN, aka Kenny Rogers, Appellee.

No. 2 CA–CR 87–0587.

Court of Appeals of Arizona, Division 2, Department B.

Aug. 2, 1988.

Review Denied Dec. 6, 1988.

Stephen D. Neely, Pima County Atty. by Anne Flynt, Tucson, for appellant.

Marshall D. Tandy, Tucson, for appellee.

## OPINION

LACAGNINA, Chief Judge.

The State of Arizona appeals from the trial court's order suppressing evidence obtained during the search of a hotel room. The state argues that the trial court abused its discretion for the following reasons:

1. The magistrate had probable cause to issue the warrant.

2. The good faith exception to the exclusionary rule was applicable to the facts of this case.

We agree with the state concerning the applicability of the good faith exception and reverse.

## FACTS

The facts as summarized from the police officer's affidavit supporting the telephonic search warrant are as follows. On August 6, 1987, the police received a telephone call from an employee of the Executive Inn stating that one of the guests, the defendant Michael Sean Killian, was acting strangely. The employee stated that Killian had checked into a room on July 29, 1987, giving his place of residence as Seattle, Washington. The employee stated that Killian had originally checked in with the intention of only staying three days but extended his stay and had been in the room nine days. He rarely left his room and would not answer telephone calls. A maid cleaning Killian's room had observed a number of weapons including pistols, rifles, and boxes of ammunition. An unidentified female had come to the hotel on the morning of July 29 and asked about Killian. She stated that he had contacted her and then refused to return her calls. She stat-

ed that she was concerned that he was sick. Early on the morning of August 6, the maid knocked on Killian's door. Killian refused to answer the door and shouted obscenities at her.

A police officer ran a check of the license plate on Killian's truck which was parked outside the room and found it registered to him with a Tucson address. A motorcycle found in the bed of the truck had a California license plate also registered to Killian. Because the police were concerned with Killian's health, they decided to knock on his door, ask him to identify himself and to state whether he was all right. Upon doing so, Killian stepped out into the hallway and acknowledged that he had been sick but that he was recovered. A police officer looking through the open door observed a pistol on the dresser and another person sleeping in the bed. Because of the possible presence of weapons and another person being in the room, the officer stepped into the room, identified himself as a police officer, and asked the person in the bed to get up. The person, who was female, got out of bed and identified herself.

Killian gave the officers permission to look at the serial numbers on the weapons in the room, pointing out to the officers the locations of the weapons. While standing next to Killian, one of the officers observed a small, plastic bag on the bedstand which contained a small amount of marijuana. Killian also gave an Alcohol, Tobacco and Fire Arm agent permission to look in his wallet, and the agent found a birth certificate and hunting license. The date of birth Killian had given the officers differed from the date shown on the hunting license. The police officer asked him his mother's name which he gave along with an address and phone number. When police called her in California, she said she was not his mother, but was a friend. He could not remember his father's name or his social security number. He stated that he was born in Pasadena. The birth certificate stated he was born in "El Hambro." The police officers decided to arrest him be-cause of the false and conflicting statements and the presence of marijuana. He was arrested on two misdemeanor charges, one count of false identification and one count of possession of marijuana. He was then advised of his *Miranda* rights, which he stated he understood. He was asked why he had a false birth certificate and answered that he did not like to be identified by papers. He admitted signing the hunting license. He also agreed that police officers had looked at things in plain view and had checked the weapons with his permission.

During a search incident to Killian's arrest, a police officer found a small brown glass vial in one of Killian's pockets which contained the residue of a white substance Killian admitted was "crank," a slang term for methamphetamine. Killian also directed the officers to $12,500 in cash in one of his boots. The money was contained in a letter envelope inside a purse divided into three or four plastic bags. He said he had gotten the money in a real estate deal two years before and had been keeping it in his house and in his boots ever since.

The police officer told the magistrate he believed there were other drugs in the room. He based this belief on Killian's possession of a large amount of cash and his statement that he had worked in June for $3.50 per hour. He also had false identification, gave two different dates of birth and had two loaded shotguns, three loaded pistols and a rifle in his room. The police officer stated that Killian did not have legitimate reasons for the presence of the money and was heavily armed, that he had been deceitful and that the police had found marijuana and methamphetamine residue. Based on the affidavit, the magistrate issued a telephonic search warrant and told the police officer he had probable cause to search the room for drugs and identification. As a result of the search, the officers found 68 grams of methamphetamine and "a lot of narcotics packaging material."[1]

---

1. The magistrate also issued a warrant to search Killian's vehicle parked in front of the room only for identification. The trial court denied Killian's motion to suppress regarding the search of the vehicle. Killian did not cross-appeal on that issue.

## STANDARD OF REVIEW

We will not disturb the trial court's ruling on a motion to suppress absent a clear abuse of discretion. *State v. Fisher*, 141 Ariz. 227, 686 P.2d 750 (1984); *State v. Superior Court*, 128 Ariz. 583, 627 P.2d 1081 (1981), *cert. denied, Gretzler v. Arizona*, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). If the record contains sufficient facts to support the trial court's ruling, we will sustain it. Regarding the applicability of the good faith exception to the exclusionary rule, we find an abuse of discretion under the facts of this case.

## PROBABLE CAUSE

■ We will uphold a magistrate's determination of probable cause if there was "substantial evidence" to conclude that a search would reveal evidence of a crime. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The state argues the trial judge abused his discretion by failing to give great deference to the magistrate's determination of probable cause given the "totality of the circumstances" set forth in the affidavit and further given the presumption of a search warrant's validity. *Id.* *See Mehrens v. State*, 138 Ariz. 458, 675 P.2d 718 (App. 1983).

The trial court found that there was no probable cause to search the hotel room for the presence of drugs and, in making that determination, stated in part as follows:

Now the question is: When the defendant is found to have $12,500 in cash on him and a vial of crank, what does that prove?

I don't think the vial of crank indicates anything. It seems to me it suggests that he's a user of drugs, not a seller of it. This is not the kind of thing that suggests anything to me over and above that it's in a personal use, shall we call it, vial and there's some left over in it.

So the nitty-gritty here is, as far as I'm concerned, is what $12,500 in cash proves over and above this.

\* \* \* \* \* \*

I didn't see in the affidavit or in Sergeant Mayer's testimony any other evidence suggesting that there were drugs on the premises then. If there's some suggestion, some indication in the conversation here indicating that then tied with the fairly large amount of cash here, large amount of cash even by defense attorney's standards, then it means something. But I just don't read evasive conduct here.

I agree entirely it's totally evasive conduct. He was having a good time with a girl in a hotel room and the police show up.

The problem is what it indicates. All the evasive conduct indicates to me is that the last person the guy wants to see is the police, not because of a dope deal but, as I say, he's on the lam.

\* \* \* \* \* \*

It seems to me to have probable cause you have to have probable cause to believe that there is some contraband on the premises at the time. And I don't see it here. I don't see probable cause to believe that existed at this time.

While we need not decide this issue, we find from the facts in this case that the trial court could have concluded, acting within its discretion, that the facts were insufficient to provide a basis for probable cause. In such a "close" case, we will not disturb the trial court's determination. *State v. Fisher, supra.*

## THE GOOD FAITH EXCEPTION

■ Assuming arguendo the trial court was correct in finding there was no probable cause to search the hotel room, the motion to suppress should in any event have been denied based on the good faith exception enunciated by the Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In that case the Supreme Court held that the exclusionary rule should not be applied to evidence obtained by officers in "good faith" reliance on a search warrant issued by a detached and neutral magistrate based upon a finding of probable cause, even where the magistrate is subsequently

found to be in error. The exclusionary rule cannot be said to have a deterent effect, that is, to alter the behavior of individual law enforcement officers, "when the offending officers acted in the objectively reasonable belief that their conduct did not violate the fourth amendment." *Id.* at 918, 104 S.Ct. at 3418, 82 L.Ed.2d at 696. Again, the trial court seems to have concluded that not only was there no probable cause but that the officers' reliance upon the determination of probable cause and the validity of the warrant was not "objectively reasonable." *Id.*

There has to be actual good faith, as I read Leon. That is, we have to second guess, looking back, and determine whether on all the facts that were known to the police officer at the time that he reasonably could have believed that he had probable cause.

\* \* \* \* \* \*

... I think the search warrant should be valid insofar as the search of the vehicle is concerned, since I find that the warrant is proper for permitting a search for identifying identification as is characterized here in the vehicle. That would authorize a sufficiently thorough search so that if any drugs were found during the course of such, a search of the vehicle for identifying material, it would ipso facto also validate seizure of any narcotics in the vehicle. I think there's good faith as to that.

But I don't really believe that the police either thought or had any particularly good reason for believing that there were drugs in either the vehicle or the hotel room.

My conclusion is that everybody thought he was a fugitive and wanted to find out who he was.

First, we agree with the trial court that subjective good faith is not enough. *United States v. Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3421 n. 23. However, we disagree with the trial court's conclusion, especially in light of its description of the officer's conduct as "exemplary, conscientious police work and thorough police work" that he could not have reasonably relied on the warrant. Despite this praise, the trial court stated: "I just have a great deal of difficulty seeing how anyone with Sergeant Mayer's knowledge could really have thought he would find further drugs there."

*United States v. Leon* does not require the police officer to have made a "deep inquiry" into the reasonableness of the warrant. Killian does not argue that the record in this case supports a claim that the magistrate abandoned his neutral role; he does not claim nor does the record show that the magistrate acted as a rubber stamp for the police. This is not a situation where the magistrate was misled by information given by the officer which he knew to be false. Nor was this an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 486 U.S. at 923, 104 S.Ct. at 3421, quoting *Brown v. Illinois*, 422 U.S. 590 at 610–611, 95 S.Ct. 2254 at 2265–2266, 45 L.Ed.2d 416 (1975) (Powell, J., concurring). Finally, this was not a situation where the warrant was facially deficient in failing to adequately describe the place or the property to be seized such that the officers could not reasonably presume it to be valid. *Id.* The question of probable cause is admittedly a close one. Reasonable minds may differ on the issue. We necessarily conclude from this that the officer's reliance on the warrant was reasonable—that he acted in good faith.

Reversed and remanded for proceedings consistent with this opinion.

FERNANDEZ, Acting P.J., and LIVERMORE, J. concur.