41 P.3d 618

The STATE of Arizona, Appellant,

v.

Robert Orbry CROWLEY, Appellee.

No. 2 CA–CR 01–0162.

Court of Appeals of Arizona, Division 2, Department A.

Feb. 22, 2002.

Barbara LaWall, Pima County Attorney, By Elizabeth Hurley, Tuscon, for Appellant.

Clay Hernandez, Tucson, for Appellee.

## OPINION

BRAMMER, Presiding Judge.

¶ 1 Appellee Robert Orbry Crowley was charged with possession of a narcotic drug for sale, possession of marijuana, and possession of drug paraphernalia. Based primarily on *State v. Berge*, 130 Ariz. 135, 634 P.2d 947 (1981), the trial court granted Crowley's motion to suppress evidence that had been seized from Crowley's home, finding invalid the warrant that had authorized the search. The state dismissed the case and filed this appeal pursuant to A.R.S. § 13–4032. Challenging the trial court's order granting Crowley's motion to suppress, the state contends

that *Berge* is no longer good law in light of the United States Supreme Court's decision in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and case law from other jurisdictions, both federal and state, decided since *Gates*. The state alternatively maintains that the trial court erred in rejecting its claim that the police officers relied on the warrant in good faith and that the court should have denied the motion to suppress on that basis. For the reasons stated below, we affirm.

## BACKGROUND

¶ 2 No witnesses testified at the suppression hearing. The parties agreed that the trial court could rule based on their memoranda, the transcript of the telephonic affidavit submitted to obtain the search warrant, and the warrant.[1] Based on that scant record, the undisputed facts are summarized below.

¶ 3 In June 2000, United States Customs officials in Oakland, California, intercepted a package from the Netherlands, apparently after a specially trained police dog had "alerted" to it. A postal examiner x-rayed and opened the package, finding that it contained a little over two pounds of hashish. The package was addressed to "Robert Crowley" at a residence in Tucson; a different name was listed on the package as the return addressee. The package was forwarded to Agent Berndt of the Metropolitan Area Narcotics Trafficking Interdiction Squad (MANTIS) in Tucson, who had its contents tested, confirming that the substance was hashish. Officers verified through a utilities check that a Robert Crowley lived at the delivery address listed on the package. A Tucson police officer telephoned the residence, and a person identifying himself as "Bob" answered.

¶ 4 On July 27, 2000, Berndt telephoned a magistrate and orally delivered his affidavit

---

1. We note that neither the transcript of the telephonic affidavit nor the warrant is part of the record on appeal. But Crowley filed a copy of the transcript as part of his "excerpts" of the record, which he filed together with his answering brief, and the state did not object. Moreover, both parties referred to the transcript in their

briefs and at oral argument. As in *State v. Berge*, 130 Ariz. 135, 136, 634 P.2d 947, 948 (1981), in which the parties did not provide the supreme court with the affidavit or the warrant, "the facts ... are not in dispute, and we [believe] the record is sufficient for us to decide the matter on its merits."

in support of his request for a search warrant, to be executed on July 28, authorizing police to search Crowley's residence for the package, which Berndt stated officers would deliver to the residence that day, and any other illegal drugs or evidence of drug-related activities. The magistrate issued the warrant. As the trial court noted at the hearing on the motion to suppress, there was no evidence that Crowley had expected the package, nor did Berndt present any information suggesting that Crowley had sent the package to himself. Other than the package, the officers had no information suggesting that Crowley unlawfully possessed drugs or was involved in drug-related activities.

¶ 5 Officers inserted an electronic device into the package that would signal them when the package was opened. They attempted to deliver the package to Crowley's address on July 28, 2000, but no one was there. An undercover United States Customs officer did deliver the package, however, on August 1. Crowley accepted it but did not open it, placing it on a shelf. The warrant was executed about an hour later. In searching the residence, officers found paraphernalia for growing marijuana, hallucinogenic mushrooms, and a pound of marijuana. They also found the unopened package of hashish. The prosecutor avowed to the trial court at the hearing on the motion to suppress that, after the house had been searched and Crowley had been arrested, an officer had called the magistrate and asked whether it had been appropriate for the officers to have executed the warrant that day, rather than on July 28. The magistrate responded that that was "okay."

¶ 6 Crowley filed a motion to suppress all of the evidence seized, arguing that the package had been unlawfully detained in the first instance because authorities did not have a warrant; that, based primarily on Berge, an anticipatory warrant such as the one issued here may not be predicated on the future commission of a crime when that crime will only occur if facilitated by future acts of the police seeking the warrant and providing the evidence of probable cause; and that the warrant was invalid when executed because it had expired. The trial court rejected the motion on all grounds except the lack of probable cause under Berge. The court found insufficient evidence to support the warrant because the police had not established probable cause on Crowley's "knowing possession or intent to knowingly possess" the drugs in the package. The court rejected the state's argument that the search had been valid because the officers had made a mistake but had acted in "good faith" in relying on the warrant. The trial court stated that, other than the package itself, there was no evidence that Crowley had committed or would commit a crime.[2]

## STANDARD OF REVIEW

▇▇▇ ¶ 7 We will not disturb a trial court's ruling on a motion to suppress evidence absent a clear abuse of discretion. *State v. Fisher*, 141 Ariz. 227, 686 P.2d 750 (1984). In reviewing the trial court's decision, we are mindful that its "task [wa]s to determine whether the totality of the circumstances indicates a substantial basis for the magistrate's decision" to issue a warrant. *State v. Hyde*, 186 Ariz. 252, 272, 921 P.2d 655, 675 (1996). *See also Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984). We note, too, that a reviewing court must grant deference to a magistrate's decision. *Hyde. See also Gates*, 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547 ("[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review."); *United States v. Whitner*, 219 F.3d 289 (3d Cir.2000) (same). A reviewing court must presume a search warrant is valid; it is the defendant's burden to prove otherwise. *Greehling v. State*, 136 Ariz. 175, 665 P.2d 57 (1983); *see also Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

2. In discussing with the prosecutor the many things the police could have done to augment the evidence establishing probable cause, the trial court commented that they could have called Crowley on the telephone and asked if he was expecting a package or performed a handwriting analysis on the box. The court stated it was troubled by the concept that the police may obtain a search warrant based upon nothing more than that a box containing drugs had been mailed to a person's home, finding far too much room for mischief in such a scenario.

## *BERGE* IS STILL GOOD LAW

¶ 8 The state contends, as it did below, that *Gates* effectively invalidated *Berge*, primarily by establishing a more fluid, flexible, totality-of-the-circumstances test for determining whether there was probable cause to support a warrant. According to the state, had the trial court applied the correct test in reviewing the magistrate's decision to issue the warrant, the court would have been compelled to deny the motion to suppress. Additionally, the state maintains that *Gates* demands that greater deference be paid to the issuing judge's decision than previously, suggesting this, too, was a departure from *Berge* that would have produced a different result here had it been applied. And, relying on post-*Gates* case law from federal courts and other states, the state insists *Berge* is an outdated anomaly. Those more recent cases, the state argues, involved similar factual scenarios in which courts found sufficient evidence had been presented to support the issuance of a warrant to search the residence of the recipient of a package known to contain contraband. Based on those authorities, the state maintains, we must find the following information established probable cause to support the warrant in this case: the very fact that a package of hashish had been mailed to Crowley; Crowley's acceptance of the package, albeit during a delivery controlled by law enforcement; and the presence of the package in Crowley's residence.

¶ 9 *Berge* was decided in 1981, almost two years before *Gates*, and is virtually indistinguishable on its facts from the case before us. There, our supreme court reversed the trial court's denial of the defendant's motion to suppress evidence that had been seized after his residence was searched pursuant to a warrant based, like here, on the interception of a package containing contraband and addressed to the defendant. The police then delivered the package to the defendant's residence. However, in *Berge*, unlike here, a confidential informant had told a narcotics detective that the defendant would be receiving by United Parcel Service (UPS) a package from Atlanta, Georgia, containing marijuana to sell in Phoenix. Pursuant to law enforcement officers' instructions, UPS intercepted a package addressed to the defendant with an Atlanta, Georgia, return address. After a police dog alerted to the package, officers obtained a warrant and opened it, finding two, one-pound bags of marijuana and $275 in cash. Based on this information, a magistrate issued a warrant authorizing officers to search the defendant and his residence after the police delivered the package to the residence. Officers rewrapped and delivered the package; the defendant accepted it and left the residence. Unable to find the defendant, officers returned to the residence and searched it. Although they did not find the package they had delivered, they did find some marijuana and drug paraphernalia. When the defendant returned, officers arrested and searched him, finding a small amount of marijuana and $275; the money contained fluorescent residue officers had sprayed on the contents of the package.

¶ 10 The trial court in *Berge* denied the defendant's motion to suppress all the evidence that had been seized. The defendant argued that the warrant was invalid because it was prospective or anticipatory; that is, because the package was not in the residence at the time the warrant was issued, there was no probable cause to support the warrant. In reversing the trial court, the supreme court held: "A search warrant may not be issued unless the issuing magistrate has probable cause to believe a crime was committed or is in the process of being committed." 130 Ariz. at 136, 634 P.2d at 948. Although the supreme court confirmed the constitutionality in this state of anticipatory search warrants,[3] as it had in *State v. Cox*, 110 Ariz. 603, 522 P.2d 29 (1974), the court nevertheless found the affidavit insufficient to support the warrant, stating:

The package, which was the basis for the warrant, was in the possession or control of the police at the time the affidavit was sworn to and the warrant issued. There was no crime as such being committed at

---

3. An anticipatory warrant is "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." 2 Wayne R. LaFave, *Search and Seizure* § 3.7(c), at 362 (3d ed.1996).

that time.[4] What defendant did with the package after he received it would determine the extent of his criminal liability. We do not believe that it is reasonable to base a warrant upon future acts that can only come into being by actions of the persons seeking the warrant.... In this case, there was no crime being committed by the defendant until the police provided the defendant with the means to commit the crime. The question is not one of an anticipatory warrant, but whether there was reasonable ground to believe a crime was being committed. At the time the warrant issued, the police knew not only that a crime was not being committed, but that it could not be committed until they made it possible for the defendant to do so.

130 Ariz. at 137–38, 634 P.2d at 949–50 (citation omitted). The state insists that *Gates* and its purported progeny have invalidated language such as this in *Berge* as well as the result in that case. We disagree.

¶ 11 The issue the Supreme Court specifically addressed in *Gates* was "the application of the Fourth Amendment to a magistrate's issuance of a search warrant on the basis of a partially corroborated anonymous informant's tip." 462 U.S. at 217, 103 S.Ct. at 2321, 76 L.Ed.2d at 534. *See also State v. Williams*, 184 Ariz. 405, 909 P.2d 472 (App. 1995) (*Gates* established totality-of-the-circumstances test for determining whether informant's tip establishes probable cause). To the extent *Gates* was a dramatic departure from previous case law, it was only on what the Court characterized as the rigid "two-pronged test" of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), for determining whether an informant's tip established probable cause for the issuance of a warrant. That test had required an informant to reveal the basis of the knowledge communicated and required the affiant seeking the warrant to provide information showing the veracity of the information or,

alternatively, the reliability of the informant in that particular case.

¶ 12 Establishing a totality-of-the-circumstances test for courts issuing warrants and those reviewing them, the Court in *Gates* stated:

> [A]n informant's "veracity," "reliability," and "basis of knowledge" are all highly relevant in determining the value of [the affiant's] report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case .... Rather, ... they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.

462 U.S. at 230, 103 S.Ct. at 2328, 76 L.Ed.2d at 543 (footnote omitted). Thus, the Court added, under the totality-of-the-circumstances test, probable cause exists if, "given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548.

■ ¶ 13 Admittedly, this and other broad language in *Gates* has been cited in cases in this state as well as in other jurisdictions that do not solely involve informants. *See, e.g., United States v. Mounts*, 248 F.3d 712 (7th Cir.2001); *United States v. Wiseman*, 158 F.Supp.2d 1242 (D.Kan.2001); *State v. Edwards*, 154 Ariz. 8, 739 P.2d 1325 (App. 1986); *State v. Cardenas–Alvarez*, 130 N.M. 386, 25 P.3d 225 (2001). But such cases cite *Gates* in a general way as prescribing a less mechanistic approach to determining probable cause and directing that a magistrate's decision be evaluated with broad deference. As the Court stated in *Gates*, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." 462 U.S.

---

4. Perhaps, however, certain crimes arising out of the very sending of the package, or any agreement to send it, had already been committed. *See McNeill v. Commonwealth*, 10 Va.App. 674,

395 S.E.2d 460 (1990), discussed in ¶ 28, *infra; see also State v. Womack*, 967 P.2d 536 (Utah Ct.App.1998), discussed in ¶¶ 24–26, *infra.*

at 232, 103 S.Ct. at 2329, 76 L.Ed.2d at 545. *See also United States v. Burke,* 718 F.Supp. 1130, 1136 (S.D.N.Y.1989) ("Whether there is probable cause to support the issuance of a search warrant is a 'commonsense, practical question' that must be decided by the issuing court viewing the 'totality-of-the-circumstances' on a case-by-case basis," *quoting Gates,* 462 U.S. at 230, 103 S.Ct. at 2328, 76 L.Ed.2d at 543); *Edwards,* 154 Ariz. at 12, 739 P.2d at 1329 (citing *Gates* for the proposition that "[a]ffidavits are to be interpreted in a commonsensical and realistic manner, looking at the totality of the circumstances").

¶ 14 *Gates,* of course, did not involve anticipatory warrants, which are unique because the very contraband that is being relied on to establish the probable cause supporting the warrant is in the control of law enforcement officers. Thus, in the context of anticipatory warrants, it is difficult to apply the language in *Gates* that probable cause is established by showing there is a "fair probability that contraband or evidence of a crime will be found in a particular place." 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. Certainly, the contraband will be found if law enforcement officers have arranged for its presence. As the Tenth Circuit Court of Appeals recognized in *United States v. Rowland,* 145 F.3d 1194 (10th Cir.1998), some courts have construed the language in *Gates* to accommodate the anticipatory warrant situation, requiring a nexus between the contraband expected to be seized after being placed by law enforcement, and criminal activity at the place to be searched. *See United States v. Dennis,* 115 F.3d 524 (7th Cir.1997); *United States v. Corral–Corral,* 899 F.2d 927 (10th Cir.1990); 2 Wayne R. LaFave, *Search and Seizure* § 3.7(d) (3d ed.1996).

¶ 15 Some of these courts recognize that, even if delivery of a package known to contain contraband to a particular place satisfies the requirement of probable cause for the delivered contraband, for a search to extend beyond the package, the warrant must be supported by additional information establishing probable cause that such other items may be in the specified location. *See, e.g., United States v. Lawson,* 999 F.2d 985 (6th Cir.1993); *United States v. Garcia,* 882 F.2d

699 (2d Cir.1989). For example, referring to *Gates,* the Tenth Circuit Court of Appeals in *Rowland* added that, "[u]nder the probable cause analysis traditionally employed in nonanticipatory warrant cases, probable cause to issue a search warrant only exists when the supporting affidavit sets forth sufficient facts that would lead a prudent person to believe that a search of the described premises would uncover contraband or evidence of a crime." 145 F.3d at 1204. The court added that "[p]robable cause to search a person's residence does not arise based solely upon probable cause that the person is guilty of a crime. Instead, there must be additional evidence linking the person's home to the suspected criminal activity." *Id.; see also United States v. Lalor,* 996 F.2d 1578, 1583 (4th Cir.1993) ("Residential searches [should be] upheld only where some information links the criminal activity to the defendant's residence.").

¶ 16 Thus, we do not believe *Gates* represented a dramatic departure from the way in which our supreme court reviewed the propriety of the magistrate's decision in *Berge.* Moreover, contrary to the state's suggestions, the court in *Berge* did not apply a rigid test for determining whether there was sufficient evidence of probable cause to support an issued warrant. Indeed, the court adopted precisely the kind of approach the Court in *Gates* prescribed, quoting the following language in *United States v. Ventresca,* 380 U.S. 102, 108–09, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965), which the court in *Gates* had quoted as well:

> [A]ffidavits for search warrants ... must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion.... A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.... [W]here these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hyper-technical, rather than a commonsense, manner.

*Berge,* 130 Ariz. at 136, 634 P.2d at 948 (alterations in *Berge* ).

¶ 17 Our supreme court's decision in *State v. Buccini,* 167 Ariz. 550, 810 P.2d 178 (1991), further supports our conclusion that *Gates* did not invalidate *Berge.* There, the court relied on *Gates* in determining the appropriate standard an appellate court should use when reviewing the sufficiency of a search warrant affidavit redrafted in accordance with the United States Supreme Court's decision in *Franks* to delete misstatements and inaccuracies. Determining that a redrafted warrant must be reviewed de novo, the court in *Buccini* stated that probable cause exists if a reasonably prudent person would be justified in concluding that the items sought under a warrant are connected with criminal activity and that the items will be found at the site designated to be searched. But the court added that justification for a search of the defendant's residence required more than the belief that the items would be found in his residence, noting: "[T]he critical question is whether such items were connected with the particular *criminal activity* of which he was suspected." *Id.* at 556, 810 P.2d at 184. Thus, although the court relied on certain portions of *Gates,* it used language similar to that in *Berge*[5] to qualify *Gates*'s requirement that a warrant be supported by a showing of probable cause to believe contraband or evidence of a crime is at the place to be searched. *Buccini* made it clear that *Gates* did not invalidate *Berge;* rather, it clarified that some criminal culpability of the recipient of a package must be established.

¶ 18 The state cited authority from other jurisdictions to support its contention that, not only did *Gates* invalidate *Berge,* but *Berge* is an anomaly, surrounded by cases factually similar with opposite results. In some of these cases, the court was merely deciding whether anticipatory warrants are constitutional; even if mentioned, *Gates* was not determinative in the decisions. Admittedly, however, some of these cases are not only persuasive but, in some instances, factually indistinguishable from the case before us. Accordingly, we address the more per-

suasive and relevant cases the state has cited.

¶ 19 In *Lawson,* for example, the Sixth Circuit Court of Appeals affirmed the district court's denial of the defendant's motion to suppress evidence seized after the defendant's residence was searched pursuant to a warrant, noting it had previously found anticipatory warrants constitutional. The warrant in *Lawson* had been based in part on a postal inspector's interception of a package addressed to the defendant that contained about six ounces of cocaine. Law enforcement officers then delivered the package to the defendant, and the defendant's residence was searched. Quoting *Gates,* the court noted that the standard of review is " 'whether the Magistrate had a substantial basis for finding that the . . . evidence would be found at the place cited.' " *Id.* at 987, *quoting Gates,* 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547. The court added that great deference must be accorded a magistrate's decision and that an officer's affidavit may be based on his or her experiences.

¶ 20 The court in *Lawson* rejected as extremely remote the possibility for mischief in permitting anticipatory warrants to be issued based solely on the sending and prospective delivery of a contraband-filled package. Pointing out that its previous decision in *United States v. Rey,* 923 F.2d 1217 (6th Cir.1991), could be construed as allowing a warrant to be issued any time an illegal substance is on a "sure course" to the addressed destination, the court conceded that, in *Lawson* as well as in *Rey,* other factors had contributed to the finding of probable cause. *Lawson,* 999 F.2d at 988. In *Lawson,* the officer's affidavit "contained a description of the package (its contents), the description of how the cocaine was concealed in the package in an attempt to avoid detection, and the fact that the return address was phoney." *Id.* at 986. And, unlike here, the officer stated that, based on his "training and experience in narcotics investigations," he believed the drugs to be delivered and other drug-related items would be found at the place to be searched. *Id.* In this respect,

---

5. As noted in ¶ 10, *supra,* the court in *Berge* stated that a magistrate must have probable cause to believe a crime has been committed or is in the process of being committed.

*Lawson* is distinguishable from both *Berge* and this case. Here, although Officer Berndt's telephonic affidavit to the magistrate described his experience in drug investigations, he did not link that general knowledge and experience with any specific belief that other contraband would likely be found at Crowley's residence.

¶ 21 Similarly, in *Whitner*, on which the state also relies, the officer's affidavit provided more information than what was provided either in this case or *Berge*. There, the Third Circuit Court of Appeals reversed the district court's granting of a motion to suppress evidence seized from the defendant's apartment, which had been searched pursuant to a warrant issued after officers in Tucson notified authorities in Pittsburgh that a suspicious package was being mailed from Tucson to a residence in Pittsburgh, addressed to Linda Liggins from Corey Liggins. Police obtained a warrant to search the package, in which they found over five pounds of what was believed to be methamphetamine. The defendant was found with Tamara Liggins at the residence, a search of which produced no useful evidence. After further investigation, officers obtained a warrant to search an apartment connected with the defendant.

¶ 22 Citing *Gates*, the Third Circuit determined that the "magistrate judge had a substantial basis for concluding that there was probable cause" to search the defendant's apartment, *Whitner*, 219 F.3d at 291–92, disagreeing with the district court's conclusion that the warrant had not been supported by probable cause because there was a "lack of evidence linking criminal activity to the location to be searched." *Id.* at 291. But again, the officer's affidavit in *Whitner* contained far more information than Berndt provided in his telephonic affidavit to the magistrate. Specifically, the officer in *Whitner* stated that he had investigated the matter with the cooperation of other law enforcement officers; that, based on his training and experience, he knew that persons involved in narcotics trafficking often maintain "stash houses" where narcotics are kept; and that, based on that experience, which he set forth in detail, he expected to find certain materials and other items at stash houses. He stated that he had caused delivery of the drugs to the first residence, that he had questioned Tamara and had arrested the defendant, and that Tamara had told officers the defendant had told her he was expecting a package containing money and he would pay her for receiving the package at her residence.

¶ 23 After questioning the defendant and others and conducting further investigation that established defendant had given contradictory information, the officer in *Whitner* had sought a warrant to search an apartment the defendant rented. The Third Circuit cautioned that it must employ a deferential view of the magistrate's decision, rather than a de novo review, citing *Gates* and, curiously, *Spinelli*. The court stated that, although there had been no direct evidence of criminal activity at the residence searched, all of the circumstances together, including the defendant's deceptive answers and attempt to conceal his address, the officer's experience with drug dealers, and other information gleaned from an independent investigation, was adequate to support the warrant. "[T]he issue is not," the court stated, "whether we or any other magistrate judge would have found probable cause predicated on [the officer's] affidavit. We consider only whether the magistrate judge who did make the decision had a substantial basis from which to reach his conclusion. We determine that he had that substantial basis." *Whitner*, 219 F.3d at 299.

¶ 24 In another case the state has cited, the Utah Court of Appeals held that anticipatory warrants are not per se unconstitutional and do not violate Utah statutes, affirming the trial court's denial of the defendant's motion to suppress drugs and other evidence seized from his residence pursuant to such a warrant. *State v. Womack*, 967 P.2d 536 (Utah Ct.App.1998). We again note that the result in that case, like many on which the state relies, had little to do with *Gates*, which the court cited along with other authorities for the general principle that deference must be paid to the decision of the magistrate issuing a warrant. In *Womack*, a UPS worker had attempted to deliver a package from

California to Roy Womack at a certain address. The address was incorrect. After UPS determined there was a Womack family in the area at another address, it delivered the package to that address. The family opened the package, found an ounce of marijuana, and gave the package to police. The person listed as the return addressee telephoned UPS about the package and was told it had been delivered to another home. She gave UPS another address, claiming that was where it should have been delivered. The same day, the defendant visited the Womack family, apparently asked about the package, and was told it was not there. Police then arranged a controlled delivery of the marijuana to the new address the return addressee had given UPS, and obtained a warrant to search that residence. When a UPS worker delivered the package, the defendant answered the door and accepted it. Officers searched the home, found the package, and arrested the defendant.

¶ 25 In determining whether the warrant was supported by probable cause, the *Womack* court noted that, although deference must be given to the magistrate's decision, the magistrate must have evidence that an event will occur (delivery of contraband) and there must be a " 'sufficient nexus' " between the contraband and the situs of the search. *Id.* at 543, *quoting Rowland*, 145 F.3d at 1201, *quoting Dennis*, 115 F.3d at 530. The court concluded that, "[i]n situations when the warrant affidavit describes a controlled delivery of contraband to the search location, the nexus criterion of probable cause is fulfilled, and the affidavit need not give further discrete proof connecting the search location with criminal actions." *Womack*, 967 P.2d at 544. And the court added: "Because the police had the package when they applied for the warrant and stated plans for a controlled delivery of the package, the magistrate could reasonably conclude the marijuana would be at the ... address when the search took place." *Id.* at 545.

¶ 26 But again, the issue the court actually addressed was the general propriety of anticipatory warrants. Comparing the facts in *Womack* to those in the Tenth Circuit's decision in *Lawson*, the Utah court in *Womack*

noted that, based on the officer's affidavit, the magistrate then had known, that "drugs are often shipped for resale and that an ounce is often divided into eighths and resold"; the return addressee had been asking for the package and was angry that it had been delivered to the wrong address; and the return addressee and the defendant had both contacted the family to whom the package had initially been delivered, asking about it. 967 P.2d at 546. The court stated, "This information could reasonably lead the magistrate to conclude that [the return addressee] and [the defendant] were indeed connected and working together to ensure the package got to [the defendant]." *Id.* The court noted that, considering all these facts, it was not likely that an innocent person was being subjected to a search. *See also Burke* (probable cause to issue warrant not negated by fact there may be innocent explanation consistent with facts alleged in warrant request); *Weber v. Superior Court*, 30 Cal.App.3d 810, 106 Cal.Rptr. 593 (1973) (possibility that person receiving package containing contraband is innocent party is irrelevant to seizure of contraband; affidavit stating parcel was addressed in care of defendant to named person who would be found at defendant's premises justified issuance of search warrant for seizure of parcel and other items described as possibly located on premises).

¶ 27 In yet another case the state has relied on, the Michigan Court of Appeals held that a person's receipt of a package containing contraband establishes probable cause to search the person's residence for drugs or other evidence connected with drug trafficking. *People v. Brake*, 208 Mich.App. 233, 527 N.W.2d 56 (1994). The court essentially avoided the question of whether anticipatory warrants are constitutional by concluding that the requisite probable cause to search the defendant's residence had existed when the officers had applied for the warrant simply because a package containing cocaine had been addressed to the defendant and sent in the mail. However, in *Brake*, unlike here or in *Berge*, the defendant had been asking the postal service about the package, which had been initially detained because the address label had been detached from the package.

¶ 28 Admittedly, as the state points out, some cases indeed appear to hold that probable cause to search a residence is provided by the very fact that a package containing contraband is sent to the defendant's residence. In *McNeill v. Commonwealth,* 10 Va.App. 674, 395 S.E.2d 460, 462 (1990), for example, the Virginia Court of Appeals held that anticipatory warrants are lawful so long as the contraband that is to be seized is on a "sure course" to its destination such as by mail and there is probable cause to believe that items to be seized will be at the place to be searched at the time the warrant is executed. The court rejected the defendant's argument that the cocaine seized from his apartment should have been suppressed because the search warrant had been issued before the drugs had arrived at the apartment and, because the police had controlled the package containing the drugs, no crime could take place unless the police officers facilitated the commission of that crime. However, the defendant had been contacted by a UPS worker about the package which had been intercepted. The defendant confirmed he was expecting it, arranged for its delivery at a specific location, and assured UPS he would be there to accept it. Nevertheless, the court found that the very fact the drugs were on a sure course to the defendant satisfied the requirement of probable cause to support the warrant, relying, in part, on *United States v. Washington,* 852 F.2d 803 (4th Cir.1988), and *United States v. Lowe,* 575 F.2d 1193 (6th Cir.1978). The *McNeill* court expressly rejected *Berge,* disagreeing with our supreme court and noting that the *Berge* court had stated its issue "was 'not one of an anticipatory warrant, but whether there was reasonable ground to believe a crime was being committed,' and no reference was made to the sure course doctrine." *McNeill,* 395 S.E.2d at 463, *quoting Berge,* 130 Ariz. at 138, 634 P.2d at 950. The *McNeill* court "reject[ed] the contention that ... no crime was in progress when the contraband was placed with UPS in Florida with direction that it be delivered to appellant in Virginia." *McNeill,* 395 S.E.2d at 463.

¶ 29 The *McNeill* court also agreed with *United States v. Hale,* 784 F.2d 1465 (9th Cir.1986), in which the Ninth Circuit Court of

Appeals distinguished its previous decision in *United States v. Hendricks,* 743 F.2d 653 (9th Cir.1984), and held that the sending of a package containing pornography was sufficient to support the issuance of a warrant. The defendant in *Hale* had argued the warrant was invalid because it had been issued before the pornography was delivered to him. But the court found that, when evidence is on a "sure course" to its destination, as it was there by having been placed in the mail, the issuance of a warrant before delivery is permissible. *Hale,* 784 F.2d at 1468. The court reasoned that, in *Hendricks,* the evidence had not been on a sure and irreversible course to its destination because the defendant had been required to pick up the package, an act that was not certain to occur; whereas, in *Hale,* the officers had taken that decision away from the defendant by attempting a controlled delivery instead.

■ ¶ 30 We are cognizant of other cases that conclude sending a package of contraband to a person at a certain location that is ultimately received there, justifies searching that location. *See, e.g., Commonwealth v. DiGiovanni,* 428 Pa.Super. 81, 630 A.2d 42 (1993); *Weber.* We concede that some of these cases are persuasive. But our supreme court reached a different result in *Berge.* And, having concluded that *Berge* remains good law in this state notwithstanding *Gates,* we are compelled to follow it. *See Myers v. Reeb,* 190 Ariz. 341, 947 P.2d 915 (App.1997) (court of appeals lacks authority to disregard or overrule supreme court decisions); *see also Hernandez–Gomez v. Volkswagen of America, Inc.,* 201 Ariz. 141, 32 P.3d 424 (App.2001) (court of appeals must follow our supreme court absent conflicting United States Supreme Court decision on same subject). *Berge* is virtually indistinguishable from the case before us, and the trial court did not abuse its discretion in relying on it in granting Crowley's motion to suppress the evidence seized.

## THE GOOD FAITH EXCEPTION

■ ¶ 31 The state contends that, even if we find the warrant was invalid, the trial court nevertheless erred in granting the mo-

tion to suppress because the police relied on the warrant in good faith. The state never mentioned this issue in its response to Crowley's motion to suppress. It only referred to the issue briefly at the hearing on the motion, citing neither Arizona's good faith statute, A.R.S. § 13–3925, nor the doctrine based on constitutional principles, particularly the Fourth Amendment, as articulated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In rejecting the state's cursory argument, the trial court referred to § 13–3925, specifically subsections (C) and (F)(1), emphasizing that the police had done nothing to establish probable cause other than intercepting a package that contained drugs and avowing that it would be delivered on a certain date.

 ¶ 32 It is the prosecution's burden to prove that the good faith exception to the exclusionary rule applies under either federal or state law. *United States v. Brunette,* 256 F.3d 14 (1st Cir.2001) (government has burden of establishing good faith exception under *Leon* ); *State v. Peterson,* 171 Ariz. 333, 830 P.2d 854 (App.1991) (state has burden of establishing good faith exception under § 13–3925). We review de novo the legal question of whether the state satisfied that burden. *United States v. Vigeant,* 176 F.3d 565 (1st Cir.1999); *see also Corral-Corral.* We conclude that the state, which presented no testimony at the suppression hearing and cited no legal authority to support this argument, has not sustained that burden.

¶ 33 Section 13–3925 was enacted in 1982, after *Berge* was decided. 1982 Ariz. Sess. Laws, ch. 161, § 1. It provides, in relevant part:

A. Any evidence that is seized pursuant to a search warrant shall not be suppressed as a result of a violation of this chapter except as required by the United States Constitution and the constitution of this state.

B. If a party in a criminal proceeding seeks to exclude evidence from the trier of fact because of the conduct of a peace officer in obtaining the evidence, the proponent of the evidence may urge that the peace officer's conduct was taken in a rea-

sonable, good faith belief that the conduct was proper and that the evidence discovered should not be kept from the trier of fact if otherwise admissible.

C. The trial court shall not suppress evidence that is otherwise admissible in a criminal proceeding if the court determines that the evidence was seized by a peace officer as a result of a good faith mistake or technical violation.

. . . .

F. For the purposes of this section:

1. "Good faith mistake" means a reasonable judgmental error concerning the existence of facts that if true would be sufficient to constitute probable cause.

2. "Technical violation" means a reasonable good faith reliance on:

. . . .

(b) A warrant that is later invalidated due to a good faith mistake.

¶ 34 Pointing to the statutory definition of "[g]ood faith mistake," the trial court stated: "The question becomes, did the police believe certain facts about Mr. Crowley's receptivity to 'knowing possession' that would have constituted probable cause? Well, they didn't really know anything or believe anything about that aspect of his willingness to accept the drugs." Although unclear, the court's comments suggest it simply did not believe the officers had possessed sufficient information to reasonably believe there was probable cause to support the warrant. The difficulty for this court in reviewing the trial court's decision is that the reason the court gave for finding a lack of good faith does not fall squarely within the statutory definitions of "[g]ood faith mistake" or "[t]echnical violation." These concepts seem to encompass those situations in which both the determination of probable cause and issuance of the warrant were based on a reasonable mistake about the facts rather than a situation such as this in which the warrant was issued based on a correct representation of the facts but facts that did not, as a matter of law, support a finding of probable cause. Nevertheless, given the paucity of this record, we can only conclude that, based on the statute

and related authority, the court correctly rejected the state's claim of good faith.

¶ 35 In *Leon*, the Supreme Court held that evidence obtained in objective good faith reliance on a faulty search warrant should not be suppressed. *See also State v. Evans*, 177 Ariz. 201, 866 P.2d 869 (1994), *rev'd on other grounds*, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995). Under *Leon*, the good faith exception is precluded in four situations: (1) when the magistrate has been misled by information "that the affiant knew was false or would have known was false" but recklessly disregarded the truth; (2) when the issuing magistrate has "wholly abandoned" his or her judicial role; (3) when a warrant is based on an affidavit that lacks any indicia of probable cause, thus rendering " 'official belief in its existence entirely unreasonable' "; and (4) when a warrant is "so facially deficient ... that the executing officers cannot reasonably presume it to be valid." 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699, *quoting Brown v. Illinois*, 422 U.S. 590, 611, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416, 431 (1975) (Powell, J., concurring in part). *See also Hyde* (applying *Leon* factors). In order for the good faith exception to apply to evidence seized pursuant to an invalid warrant, the police conduct must have been objectively reasonable. *Leon; see also Williams* (finding good faith exception inapplicable because officers could not reasonably have relied on warrant that failed to describe with particularity place to be searched or items to be seized and because officer must have known that information informant had provided required personal observation).

¶ 36 *Berge* was decided in 1981, establishing clearly and unequivocally that an anticipatory warrant is invalid if the only evidence of probable cause is the very evidence police will be providing. As the Court stated in *Leon*, officers are assumed to have "a reasonable knowledge of what the law prohibits." 468 U.S. at 919 n. 20, 104 S.Ct. at 3419 n. 20, 82 L.Ed.2d at 696 n. 20. Here, as in *Berge*, the officers had nothing other than the contraband-filled package to establish probable cause that Crowley would be committing a crime once the package was

delivered to and accepted by him. The officers' conduct was not objectively reasonable, and the good faith exception to the exclusionary rule does not apply.

¶ 37 In this respect, the case before us is distinguishable from *State v. Killian*, 158 Ariz. 585, 764 P.2d 346 (App.1988). There, the trial court had granted the defendant's motion to suppress evidence, finding the warrant was not supported by probable cause and that the good faith exception to the exclusionary rule did not apply. In reversing the trial court's order, we relied on *Leon*, as had the trial court, for the proposition that an officer's "subjective good faith is not enough." *Killian*, 158 Ariz. at 588, 764 P.2d at 349. But, we found the trial court had erred in concluding that it had been objectively unreasonable for the police to rely on the warrant. In *Killian*, however, based on an overall assessment of the facts that had been submitted to support the warrant, the officers did not have probable cause. Nonetheless, we disagreed with the trial court's conclusion that the officer could not have reasonably relied on the warrant. We reached that conclusion, in part, because the trial court had characterized the "officer's conduct as 'exemplary, conscientious police work and thorough police work.' " *Id.*

¶ 38 In contrast here, there was case law directly on point, *Berge*, that made it objectively unreasonable for the officers to rely on the warrant. The state offered no evidence to sustain its burden of establishing that, notwithstanding the law on this issue, the officers had nevertheless acted reasonably by believing that the warrant was supported by probable cause. Thus, its arguments, made for the first time on appeal, necessarily fail.

¶ 39 We also reject what we understand to be the state's claim that the trial court erred in suggesting the officers were required to establish the elements of the offense of possession of an unlawful drug to validate the search warrant. It is true that the affidavit supporting a warrant need not provide sufficient evidence to establish the elements of the specific crimes with which the suspect is ultimately charged. Here, however, the only crime for which probable

cause conceivably could have been established so as to authorize a search of Crowley's residence was possession of the drugs that the police anticipated delivering there.

¶ 40 The trial court's order granting Crowley's motion to suppress the evidence seized from his home is affirmed.

FLÓREZ and PELANDER, JJ., concurring.