NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

DAVID RAYMOND EDWARDS, *Appellant.*

No. 1 CA-CR 13-0238
FILED 03/11/2014

---

Appeal from the Superior Court in Mohave County
No. S8015CR201101261
The Honorable Derek C. Carlisle, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Myles A. Braccio
*Counsel for Appellee*

Mohave County Legal Defender's Office, Kingman
By Diane S. McCoy
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Margaret H. Downie joined.

---

**B R O W N**, Judge:

¶1 David Raymond Edwards appeals his convictions and sentences for possession of marijuana and possession of drug paraphernalia. Edwards argues the trial court erred by denying his motion to suppress evidence seized from his home pursuant to a search warrant. For the following reasons, we affirm.

## BACKGROUND

¶2 In October 2011, Peter McCluney was arrested and found in possession of marijuana, drug paraphernalia, and narcotic pills. The arresting officers notified the Bullhead City Police Department's narcotics bureau of the arrest, and Officer Marvin Harris interviewed McCluney, who admitted possession of the drugs and paraphernalia and reported that he purchased the marijuana from Edwards. McCluney explained that he purchased several ounces of marijuana from Edwards every month, sometimes weekly. McCluney informed Officer Harris that "Edwards would have anywhere from two pounds to as high as twenty one pounds of marijuana at his residence at one time."

¶3 Officer Harris drove McCluney to Edwards' neighborhood and McCluney identified Edwards' former and current residences located on the same street. Officer Harris drove McCluney down the street twice, and McCluney identified Edwards' current residence both times.

¶4 Following the interview, Officer Harris learned that Edwards had a previous conviction for possession of marijuana. Officer Harris also determined that the contract for utilities for the residence McCluney identified was in Edwards' wife's name. Based on this information, and the interview with McCluney, Officer Harris submitted a probable cause affidavit and obtained a search warrant for Edwards' residence.

¶5 Police officers executing the search warrant at Edwards' residence found drug paraphernalia and more than a pound of marijuana.

The State charged Edwards with one count of possession of marijuana for sale, a class four felony, and one count of possession of drug paraphernalia, a class six felony.

¶6　　　　Edwards filed a motion to suppress the evidence seized from his residence, arguing that the affidavit supporting the search warrant failed to demonstrate McCluney's reliability and that the warrant was therefore invalid. The State responded that the search warrant affidavit set forth sufficient probable cause to support the warrant. The State further argued that, even if the search warrant affidavit was facially invalid, the officers acted in good faith and therefore the motion to suppress should be denied. After an evidentiary hearing on the motion, the trial court denied Edwards' motion to suppress, finding "there was sufficiently reliable information" in the affidavit to establish the necessary probable cause and the officers acted in good faith even if probable cause was lacking.

¶7　　　　The matter proceeded to trial and a jury found Edwards guilty of possession of drug paraphernalia. The jury acquitted him of possession of marijuana for sale, but convicted him of the lesser-included offense of possession of marijuana. At sentencing, the court suspended imposition of a sentence and placed Edwards on probation for a period of three years. Edwards timely appealed.

## DISCUSSION

¶8　　　　Edwards argues that the trial court erred by denying his motion to suppress. He contends that the seized evidence should not have been admitted because the search warrant was deficient and the police officers lacked good faith in executing it.

¶9　　　　"The Fourth Amendment to the United States Constitution requires that search warrants be issued only upon a showing of probable cause supported by oath." *State v. Collins*, 21 Ariz. App. 575, 576, 522 P.2d 40, 41 (1974); U.S. const. amend. IV ("[N]o Warrant shall issue but upon probable cause, supported by Oath or affirmation."). The Arizona Constitution provides similar protections. Ariz. Const. art. 2, § 8 ("No person shall be disturbed in his private affairs, or his home invaded, without authority of law.").

¶10　　　　In determining whether the requisite probable cause exists, the "task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of

persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The duty of the reviewing court, then, is "to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* (internal quotations omitted).

¶11 We review a trial court's denial of a motion to suppress for an abuse of discretion. *State v. Crowley*, 202 Ariz. 80, 83, ¶ 7, 41 P.3d 618, 621 (App. 2002). "[W]e defer to the trial court's factual determinations, but the ultimate ruling [whether suppression of evidence is warranted] is a conclusion of law we review de novo." *State v. Box*, 205 Ariz. 492, 495, ¶ 7, 73 P.3d 623, 626 (App. 2003). "We restrict our review to consideration of the facts the trial court heard at the suppression hearing." *State v. Blackmore*, 186 Ariz. 630, 631, 925 P.2d 1347, 1348 (1996). Search warrants are presumed valid and the defendant carries the burden of proving the invalidity of the warrant. *Crowley*, 202 Ariz. at 83, ¶ 7, 41 P.3d at 621; *see also* Ariz. R. Crim. P. 16.2(b) (explaining that the State has the burden of proving the lawfulness of all evidence to be used at trial, but if such evidence is obtained by a valid search warrant, it is the defendant's burden to establish a "prima facie case that the evidence taken should be suppressed").

¶12 Edwards first contends the search warrant was defective because it was predicated on information provided by an informant lacking personal knowledge. Citing *State v. Williams*, 184 Ariz. 405, 407, 909 P.2d 472, 474 (App. 1995), for the proposition that "an unreliable informant who lacks personal knowledge cannot provide probable cause," Edwards argues the warrant lacked sufficiently specific detail to establish McCluney's personal knowledge and to demonstrate that the information was not stale.

¶13 "An affidavit relying on hearsay is not to be deemed insufficient . . . so long as a substantial basis for crediting the hearsay is presented." *Gates*, 462 U.S. at 241-42 (internal quotation omitted). An officer may validly "rely upon information received through an informant, rather than his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *Id.* (internal quotation omitted). When "an informant is right about some things, he is more probably right about other facts," including claims regarding illegal activities. *Id.* at 244. "It is enough, for purposes of assessing probable cause, that corroboration through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting the hearsay." *Id.* at

244-45 (internal quotation omitted). Corroboration of "entirely innocent activity" may be sufficient to demonstrate probable cause. *Id*. at 245 n.13.

¶14        Contrary to Edwards' argument, the affidavit in this case demonstrates McCluney had personal knowledge that Edwards possessed drugs at his residence. As set forth in the affidavit, McCluney purchased several ounces of marijuana from Edwards at least monthly and, at times, on a weekly basis. Although not expressly stated, the affidavit also implied that McCluney had purchased drugs from Edwards for an extended period of time, as demonstrated by McCluney's knowledge of the location of Edwards' previous residence and the length of time (approximately ten years) Edwards occupied that home. Edwards correctly notes that the affidavit did not specify when McCluney purchased marijuana from Edwards, but McCluney's disclosures regarding the duration and frequency of his purchases, in addition to his statement that Edwards kept "anywhere from two pounds to as high as twenty one pounds of marijuana" at his residence at any given time, established that "there [wa]s a fair probability that contraband or evidence of a crime [would be] found" at Edwards' home. *See Gates*, 462 U.S. at 238.

¶15        Before applying for a search warrant, Officer Harris drove McCluney to Edwards' residence to verify that McCluney knew its location, and Officer Harris confirmed that Edwards occupied the home by checking the named party responsible for the utilities to the property (Edwards' wife). In addition, Officer Harris checked Edwards' criminal history and discovered that he had a previous conviction for possession of marijuana. McCluney's information, as corroborated by independent police investigation, was sufficient to establish probable cause for the warrant.

¶16        Edwards also argues that McCluney lacked credibility and therefore the warrant is invalid. We disagree. In general, a named informant is "more reliable than an anonymous . . . tipster [because] the former runs the greater risk that he may be held accountable if his information proves false." *United States v. Salazar*, 945 F.2d 47, 50-51 (2d Cir. 1991). Here, McCluney's identity was clearly known to police and set forth in the affidavit. Edwards contends, however, that McCluney's motivation in providing information to the police was suspect because, as disclosed at the suppression hearing, McCluney expressed great concern to Officer Harris that his wife could be charged with a crime and, although Officer Harris was certain he never offered McCluney "anything himself," the officer could not recall whether he had made any assurances with regard to McCluney's wife. It is not clear from this record whether

McCluney received any promises on behalf of his wife, but even assuming he was offered favorable treatment in exchange for his statements, this would not render them per se unreliable. *United States v. Patayan Soriano*, 361 F.3d 494, 505 (9th Cir. 2004). In *Patayan Soriano*, the court noted an offer of favorable treatment to an informant and explained that the informant "was presumably motivated to provide information after his arrest out of hope that his cooperating would result in more lenient treatment for himself by the authorities. [The informant] could not achieve that goal if he gave false information, so the circumstances in which he provided the information further served to corroborate its reliability." *Id.*; *see also United States v. Harris*, 403 U.S. 573, 583 (1971) ("That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct."); *United States v. Davis*, 617 F.2d 677, 693 (D.C. Cir. 1979) (noting that an admitted criminal participant has strong incentive to tell the truth because "should he lie to the police," he "risks disfavor with the prosecution").

¶17         Additionally, an informant's inculpatory statements may demonstrate credibility. *Patayan Soriano*, 361 F.3d at 505-06 (explaining that reliability may be demonstrated by an "admission against penal interest") (internal quotation omitted). Here, McCluney admitted possession of the drugs and drug paraphernalia found on his person. Although Edwards correctly notes the police already had substantial evidence McCluney committed those crimes, McCluney's admissions were nonetheless incriminating. And, McCluney's information regarding Edwards in no way exculpated him from possession charges. We conclude McCluney's status as a named informant, his motivation to cooperate with the police to procure favorable treatment for himself and his wife, and his incriminating statements were sufficient to establish his credibility as an informant.

¶18         Viewing the totality of the circumstances, the record supports the trial court's finding that McCluney was a reliable and credible informant. Accordingly, because probable cause existed for the search warrant, the trial court did not abuse its discretion in denying Edwards' motion to suppress.[1]

---

[1]     Edwards also argues the warrant was so lacking in probable cause that the good-faith exception to the warrant requirement does not apply. *See* Ariz. Rev. Stat. § 13-3925. Because we conclude the warrant was supported by probable cause, we need not address this argument.

**CONCLUSION**

**¶19** For the foregoing reasons, Edwards' convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: gsh