IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

———————————————

THE STATE OF ARIZONA,
*Appellant*,

*v.*

NICHOLAS OLAF KJOLSRUD AND
LONI KAY KAMBITSCH,
*Appellees*.

Nos. 2 CA-CR 2015-0230 and 2 CA-CR 2015-0231 (Consolidated)
Filed March 18, 2016

———————————————

Appeal from the Superior Court in Cochise County
Nos. CR201400526 and CR201400527
The Honorable Karl D. Elledge, Judge

**AFFIRMED**

———————————————

COUNSEL

Brian M. McIntyre, Cochise County Attorney
By Roger H. Contreras, Deputy County Attorney, Bisbee
*Counsel for Appellant*

Mark A. Suagee, Cochise County Public Defender, Bisbee
*Counsel for Appellee Kjolsrud*

Joel Larson, Cochise County Legal Defender
By Bruce Houston, Assistant Legal Defender, Bisbee
*Counsel for Appellee Kambitsch*

_____

## OPINION

Presiding Judge Vásquez authored the opinion of the Court, in which Chief Judge Eckerstrom and Judge Miller concurred.

_____

V Á S Q U E Z, Presiding Judge:

**¶1**  Appellees Loni Kambitsch and Nicholas Kjolsrud were charged with multiple drug-related offenses based on drugs and drug paraphernalia seized from their vehicle after a traffic stop. Relying, in part, on *Rodriguez v. United States*, ___ U.S. ___, 135 S. Ct. 1609 (2015), the trial court granted Kambitsch and Kjolsrud's motion to suppress the drug evidence, finding continued detention by a sheriff's deputy to conduct a drug-detection-dog investigation after the completed traffic stop was not based on reasonable suspicion. The state dismissed the cases and filed these appeals pursuant to A.R.S. § 13-4032(6). The state argues the court erred when it concluded the deputy conducting the stop lacked reasonable suspicion to expand the scope of the detention. The state also contends the good-faith exception to the exclusionary rule applies because the deputy relied on previously binding precedent when conducting the search. For the following reasons, we affirm.

## Factual and Procedural Background

**¶2**  We view the evidence in the light most favorable to upholding the trial court's suppression order. *State v. Vera*, 196 Ariz. 342, ¶ 3, 996 P.2d 1246, 1247 (App. 1999). On an early morning in September 2014, Cochise County Sheriff's Deputy Adam Werkheiser stopped the car being driven by Kambitsch because its license plate was not illuminated. Werkheiser approached the passenger-side window and asked Kambitsch for her driver license, vehicle registration, and proof of insurance. He asked Kjolsrud, the sole passenger, for his identification. Kambitsch and Kjolsrud gave Werkheiser the requested items. Werkheiser then asked if there were any weapons in the vehicle and "specifically . . . if there was anything illegal within the passenger compartment." Kjolsrud said

they had a rifle in the trunk, but both occupants stated there was nothing illegal in the car.

¶3        Werkheiser returned to his patrol vehicle and performed a records check, which revealed no issues with Kambitsch's driver license, but both Kambitsch and Kjolsrud had outstanding, "non-extraditable" warrants.  He also remembered Kjolsrud "had been involved in a [prior] drug offense case."  By that time, Deputy Michael McGeoghegan arrived at the scene as "a back-up officer."  Although Werkheiser testified he "could have concluded the stop at that time" because he "knew the warrants were non-extraditable" he nevertheless asked Kambitsch to step out of the car and brought her near "the passenger fender of [his] vehicle."

¶4        Werkheiser testified Kambitsch made no eye contact as they walked to his patrol vehicle, and, without prompting, she quickly stated that she was aware of the warrant and "[t]he police were always harassing her" about it.  Kambitsch also emptied her pockets and stated, "See, I don't have anything on me" and "I'm clean."  Werkheiser "thought it was odd because [he] hadn't asked her" a question yet and Kambitsch seemed rushed.

¶5        Werkheiser then asked for consent to search her vehicle. Kambitsch replied:  "I know my rights.  I don't have to let you search.  I know what my fiancé is going to say.  He's going to say, No, and also if you want to search you can get a dog."  Werkheiser testified he did not interpret this statement as giving consent.  He then radioed for Deputy Robert Watkins to bring his drug-detection dog to the scene.  The dog alerted to the vehicle, and during a subsequent search, deputies found ninety-four grams of methamphetamine, as well as tinfoil and a spoon covered in a "black gooey substance."

¶6        A grand jury indicted both Kambitsch and Kjolsrud for conspiracy to commit possession of a dangerous drug for sale, transportation of a dangerous drug for sale, possession of a dangerous drug for sale, and two counts of possession of drug paraphernalia.  Kambitsch filed a motion to suppress, which Kjolsrud joined, arguing that although the initial stop was justified,

Werkheiser lacked reasonable suspicion to prolong the stop. A little more than a month before the suppression hearing, the United States Supreme Court issued its decision in *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1614-16, holding that law enforcement officers may not "extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." Kambitsch and Kjolsrud informed the trial court of *Rodriguez* on the day of the suppression hearing, and the state filed a response the following day arguing that, even if a constitutional violation had occurred, the good-faith exception to the exclusionary rule applied and, therefore, the evidence should not be suppressed at trial.

¶7 After an evidentiary hearing, the trial court granted the motion to suppress, "conclud[ing] that by detaining Kambitsch and Kjolsrud after conducting a records check and warrants check, Werkheiser prolonged the traffic stop beyond the time reasonably required to complete his task, i.e., issue the citation/repair order" and, "[m]oreover, the prolongation was not supported by independent reasonable suspicion." The state then moved to dismiss the charges without prejudice and initiated these appeals, which we consolidated. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4032(6).

**Illegal Search and Seizure**

¶8 The state argues Werkheiser did not extend the traffic stop impermissibly and had developed reasonable suspicion during the stop to conduct a further investigation. When reviewing an order granting a motion to suppress, this court considers only the evidence presented during the suppression hearing, *State v. Gay*, 214 Ariz. 214, ¶ 4, 150 P.3d 787, 790 (App. 2007), and defers to the trial court's factual findings, *State v. Barnes*, 215 Ariz. 279, ¶ 2, 159 P.3d 589, 590 (App. 2007). We review mixed questions of fact and law — including the court's ultimate conclusion as to whether reasonable suspicion existed — de novo. *State v. Wyman*, 197 Ariz. 10, ¶ 5, 3 P.3d 392, 395 (App. 2000); *Vera*, 196 Ariz. 342, ¶ 4, 996 P.2d at 1247.

¶9 The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV; *see State v. Gilstrap*, 235 Ariz. 296, ¶ 7, 332 P.3d 43, 44 (2014). "'An investigatory stop of

a motor vehicle constitutes a seizure,'" but is less intrusive than an arrest, and for that reason officers "need only possess a reasonable suspicion that the driver has committed an offense" to conduct a stop. *State v. Livingston*, 206 Ariz. 145, ¶ 9, 75 P.3d 1103, 1105 (App. 2003), *quoting State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996). Thus, an officer who has witnessed a traffic violation may initiate a stop. *See Whren v. United States*, 517 U.S. 806, 810 (1996); *Vera*, 196 Ariz. 342, ¶ 5, 996 P.2d at 1247.

¶10 That justification, however, does not give an officer authority to conduct the stop indefinitely. *See State v. Sweeney*, 224 Ariz. 107, ¶ 17, 227 P.3d 868, 873 (App. 2010) (traffic stop "'must be temporary and last no longer than is necessary to effectuate the purpose of the stop'"), *quoting Florida v. Royer*, 460 U.S. 491, 500 (1983). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' — to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1614, *quoting Illinois v. Caballes*, 543 U.S. 405, 407 (2005). In other words, "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are — or reasonably should have been — completed." *Id.* Once the time needed to complete this mission has passed, an officer "must allow a driver to continue on his way unless (1) the encounter between the driver and the officer becomes consensual, or (2) during the encounter, the officer develops a reasonable and articulable suspicion that criminal activity is afoot." *Sweeney*, 224 Ariz. 107, ¶ 17, 227 P.3d at 873; *see also State v. Teagle*, 217 Ariz. 17, ¶ 22, 170 P.3d 266, 272 (App. 2007).

¶11 The parties do not dispute that the initial traffic stop was reasonable. Werkheiser properly conducted the stop after viewing a traffic violation. *See* A.R.S. § 28-925(C); *Vera*, 196 Ariz. 342, ¶ 5, 996 P.2d at 1247. And, it was reasonable for Werkheiser to make contact with Kambitsch and Kjolsrud, collect their documents, and perform a records check. *See Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1615 ("'ordinary inquiries incident to'" traffic stops include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the

automobile's registration and proof of insurance"), *quoting Caballes*, 543 U.S. at 408.

**¶12**        Werkheiser testified that after he completed these tasks, he "could have concluded the stop at that time . . . because [he] knew the warrants were non-extraditable." Although his original "intent was just to give the driver a warning for equipment violation," he decided to wait to "start th[at] process . . . after [he] radioed Deputy Wat[kins]." When the trial court asked "[w]hat prevented [him] from writing the warning and repair order prior to questioning . . . Kambitsch," Werkheiser responded, "I guess myself." Thus, when he asked Kambitsch to step out of the car and walk back to his vehicle, under *Rodriguez*, this further delay amounted to an additional seizure requiring independent reasonable suspicion. *See Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1614-15.

**¶13**        The state nevertheless argues "[o]fficers are permitted to ask motorists questions, even unrelated to traffic stops, so long as the police do not unreasonably prolong the stop" and "are allowed to order occupants out of a car, . . . especially when reasonably necessary for safety concerns." Law enforcement officers are permitted to remove occupants from a vehicle as a safety precaution. *See Pennsylvania v. Mimms*, 434 U.S. 106, 117 n.6 (1977). But in *Rodriguez*, the United States Supreme Court clarified this general rule: "Unlike a general interest in criminal enforcement, . . . the government's officer safety interest stems from the mission of the stop itself. . . . On-scene investigation into other crimes, however, detours from that mission. . . . So too do safety precautions taken in order to facilitate such detours." *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1616.

**¶14**        Nothing in the record suggests Werkheiser had safety concerns when he returned to the car after the records check was completed. He conceded he had no reason to question that the rifle "was secured in the trunk" of the vehicle and it did not "cause[ him] any concern for [his] own personal safety." Werkheiser testified:

> Based on [the warrants] I wanted to
> determine if there was any criminal activity

> going on. In most of my criminal
> investigations I thought it was good to talk
> to people away from other people to get
> their stories correct or to see if their stories
> are different or the same.

Thus, removing the driver from the car to undertake further questioning falls into the category of a "detour" from the mission of the underlying traffic stop as described in *Rodriguez*. And, because Werkheiser conceded that, instead of taking this detour, he could have completed the traffic stop at that time, his detour amounts to an additional seizure under the Fourth Amendment.

¶15 Consequently, we must determine whether the deputy had reasonable suspicion to extend the detention beyond the traffic stop. Reasonable suspicion exists if, under the totality of the circumstances, an officer developed "'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *State v. Evans*, 237 Ariz. 231, ¶ 8, 349 P.3d 205, 208 (2015), *quoting United States v. Cortez*, 449 U.S. 411, 417-18 (1981). "'[I]n determining whether [an] officer acted reasonably . . . , due weight must be given, not to his inchoate and unparticularized suspicion or hunch, but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.'" *State v. Johnson*, 220 Ariz. 551, ¶ 6, 207 P.3d 804, 808 (App. 2009), *quoting Terry v. Ohio*, 392 U.S. 1, 27 (1968) (first alteration in *Johnson*); *see also State v. Fornof*, 218 Ariz. 74, ¶¶ 5-6, 179 P.3d 954, 956 (App. 2008).

¶16 Werkheiser testified that he "suspected there was criminal activity going on after [he] received the information from the checks." Kambitsch's warrant "was for a drug offense," but Werkheiser could not "recall the nature" of Kjolsrud's warrant. He also "looked up [Kjolsrud's] involvements within [the] department's database" because he remembered Kjolsrud "had been involved in a drug offense case" before. But Werkheiser never testified about what, if anything, he had discovered or how Kjolsrud had been involved in the prior case.

¶17 Criminal history alone cannot support a finding of reasonable suspicion. *State v. Woods*, 236 Ariz. 527, ¶ 12, 342 P.3d

863, 866 (App. 2015). And, although an outstanding warrant could "'cast a suspicious light on . . . seemingly innocent behavior,'" *id.*, *quoting United States v. Simpson*, 609 F.3d 1140, 1147 (10th Cir. 2010) (alteration in *Woods*), in this case we agree with the trial court—Werkheiser did not identify any other circumstances that established reasonable suspicion. He stated the location of the stop was not "a high-crime area," "[t]here was nothing inconsistent or implausible about [their] . . . mode of travel that night," he did not observe anything in particular when he made contact with Kambitsch and Kjolsrud, and he had not "formed any opinions or anything" before returning to his vehicle for the records check.[1] *See Fornof*, 218 Ariz. 74, ¶ 5, 179 P.3d at 956 (appellate court must "'give due weight to inferences drawn from [the] facts by . . . local law enforcement officers'"), *quoting Ornelas v. United States*, 517 U.S. 690, 699 (1996). Thus, it appears Werkheiser's decision to conduct a separate criminal investigation was based solely on the warrants and Kjolsrud's involvement in a former case. Considering the totality of the circumstances, the deputy lacked reasonable suspicion to delay the traffic stop, and that delay amounted to an unreasonable search and seizure. *See Wyman*, 197 Ariz. 10, ¶ 5, 3 P.3d at 395; *Vera*, 196 Ariz. 342, ¶ 4, 996 P.2d at 1247.

---

[1]The state asserts Werkheiser "observed that the vehicle contained a lot of personal property" and "that there was a blue butane torch on the passenger floorboard at [Kjolsrud's] feet." To the extent the state suggests these facts added to Werkheiser's reasonable suspicion, we disagree. First, the timing of when the deputies noticed the torch was disputed at the hearing. Second, Werkheiser only stated that the personal property inside the vehicle added to his reasonable suspicion (1) at the end of his testimony, (2) at the prompting of the prosecutor, and (3) after having omitted this fact several times earlier when listing what factors had contributed to his suspicion. The trial court excluded these facts from its findings and, therefore, implicitly rejected the officer's assertions. *See State v. Pike*, 113 Ariz. 511, 514, 557 P.2d 1068, 1071 (1976) ("The credibility of witnesses is a question for the trier of fact whose determination will not usually be disturbed on appeal.").

### Exclusionary Rule

**¶18** The state argues that, even if the delay resulted in an unlawful search and seizure, the trial court should not have suppressed the evidence obtained from that search. It asserts "Werkheiser acted in good faith on existing case law in conducting the traffic stop" and therefore the good-faith exception to the exclusionary rule applies. We review the court's application of exclusionary principles de novo.[2] *State v. Rosengren*, 199 Ariz. 112, ¶ 9, 14 P.3d 303, 307 (App. 2000). The state bears the burden of showing the exception applies. *State v. Crowley*, 202 Ariz. 80, ¶ 32, 41 P.3d 618, 629 (App. 2002).

**¶19** "[T]he sole purpose of the exclusionary rule [is] to deter Fourth Amendment violations," *State v. Driscoll*, 238 Ariz. 432, ¶ 11, 361 P.3d 961, 963 (App. 2015), in particular when "'the police have engaged in willful, or at the very least negligent, conduct,'" *State v. Hyde*, 186 Ariz. 252, 275, 921 P.2d 655, 678 (1996), *quoting Michigan v. Tucker*, 417 U.S. 443, 447 (1974). But the threat of suppression has little effect when officers act with the reasonable, good-faith belief that their conduct falls within the permissible bounds of the Fourth Amendment. *See State v. Killian*, 158 Ariz. 585, 588, 764 P.2d 346, 349 (App. 1988). Thus, "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." *Davis v. United States*, 564 U.S. 229, ___, 131 S. Ct. 2419, 2429 (2011).

**¶20** For our purposes, binding precedent is "Arizona or Supreme Court authority [that] explicitly authorized" the conduct in question. *State v. Mitchell*, 234 Ariz. 410, ¶ 31, 323 P.3d 69, 78 (App.

---

[2]The state raised its good-faith argument in a supplemental brief filed the day after the suppression hearing, and the trial court did not address the argument in its order. Nonetheless, we address this issue in the first instance because it is a mixed question of fact and law, the trial court provided ample findings of fact relevant to this issue, and all that remains to resolve is the application of the law to those facts. *See State v. Boteo-Flores*, 230 Ariz. 551, ¶ 11, 288 P.3d 111, 114 (App. 2012).

2014); *see State v. Reyes*, 238 Ariz. 575, ¶¶ 11-12, 364 P.3d 1134, 1136 (App. 2015). If the law is, "at the very least, unsettled," then "application of the exclusionary rule would provide meaningful deterrence because . . . it incentivizes law enforcement to err on the side of constitutional behavior." *Mitchell*, 234 Ariz. 410, ¶ 31, 323 P.3d at 78. In other words, although law enforcement agencies are not "expected to anticipate new developments in the law," they should be aware of "reasonable" interpretations of existing case law. *Id.*

**¶21** The issue at hand, then, is whether Werkheiser's conduct was authorized by binding Arizona precedent prior to *Rodriguez*. Two cases are instructive on this point: *Sweeney* and *State v. Box*, 205 Ariz. 492, 73 P.3d 623 (App. 2003), *abrogated in part by Driscoll*, 238 Ariz. 432, ¶¶ 12-13, 17, 361 P.3d at 964-65. In each case, this court considered whether an officer's delay in order to conduct a dog sniff after a completed traffic stop amounted to an additional detention requiring independent reasonable suspicion. *Sweeney*, 224 Ariz. 107, ¶¶ 13-15, 227 P.3d at 872; *Box*, 205 Ariz. 492, ¶¶ 13-20, 73 P.3d at 627-29. In *Box*, the officer "was traveling with a trained narcotics detection dog" and the delay needed to conduct the dog sniff was "less than a minute." *Box*, 205 Ariz. 492, ¶¶ 5, 24, 73 P.3d at 625, 630. This court therefore concluded the delay was "de minimis and not unreasonable under the Fourth amendment." *Id.* ¶¶ 18, 24; *see also United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 649 (8th Cir. 1999) (two-minute delay for dog sniff a de minimis intrusion on defendant's liberty), *abrogated by Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1615-16. In *Sweeney*, by contrast, the officer "waited until the arrival of a second officer (whose presence he had not requested until after [the defendant] declined to consent to a search) before conducting the sniff." 224 Ariz. 107, ¶ 15, 227 P.3d at 872. Thus, we concluded that delay "was an additional seizure under the Fourth Amendment," requiring reasonable suspicion independent of the traffic violation. *Id.* ¶ 20.

**¶22** The state maintains that *Box*—along with its de minimis intrusion rule—was binding precedent and that *Rodriguez* "broke new ground in concluding that a dog sniff conducted after a completed traffic stop unconstitutionally extended the stop." *See*

*Driscoll*, 238 Ariz. 432, ¶ 17, 361 P.3d at 965 (relying on *Box* as binding precedent). It suggests "the trial court did not consider the reasonableness of the officers' conduct in light of the then-applicable law" and instead improperly focused solely on *Rodriguez*, which the state characterized as a "knee jerk reaction" during oral argument before this court. We disagree.

**¶23** Even if made before *Rodriguez*, the trial court's ruling would have been correct. Like the officer in *Sweeney*, Werkheiser called for another deputy to come to the scene before the dog sniff occurred. This delay—approximately ten minutes—was not "a de minimis intrusion on the defendant's liberty," *Sweeney*, 224 Ariz. 107, ¶ 14, 227 P.3d at 872, as described in *Box*. Significantly, the court in *Box* considered the delay for a drug-detection dog to arrive at the scene to be "[a] noteworthy factual distinction." *Box*, 205 Ariz. 492, ¶ 18, 73 P.3d at 628 (noting distinction between *Box* and *United States v. Wood*, 106 F.3d 942 (10th Cir. 1997), in which the Tenth Circuit ordered drugs suppressed, "is that, in *Wood*, the officer making the traffic stop did not have a narcotics dog in his patrol car"). Under these circumstances, the good-faith exception does not apply. *See Mitchell*, 234 Ariz. 410, ¶ 31, 323 P.3d at 78.

**¶24** Although the holding in *Rodriguez* was significant in Arizona to the extent it abrogated *Box*, its holding did not "overrule prior Supreme Court precedent or announce a new legal standard." *Id.* Rather, *Rodriguez* applied a general rule that the Court had announced as early as 1983 in *Royer*, 460 U.S. at 500, and again in 2005 in *Caballes*, 543 U.S. at 407. *See Rodriguez*, ___ U.S. at ___, ___, 135 S. Ct. at 1612, 1614 (relying on *Royer* and *Caballes* for the proposition that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'"); *see also Sweeney*, 224 Ariz. 107, ¶ 17, 227 P.3d at 873 (relying on *Royer*). "A seizure that is justified solely by the interest in issuing a . . . ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Caballes*, 543 U.S. at 407.

**¶25** The state has not shown that the good-faith exception applies in this case. *See Crowley*, 202 Ariz. 80, ¶ 32, 41 P.3d at 629.

Therefore, the trial court did not err when it suppressed the evidence. *See Rosengren*, 199 Ariz. 112, ¶ 9, 14 P.3d at 307.

## Disposition

**¶26** For the foregoing reasons, we affirm the trial court's orders granting Kambitsch and Kjolsrud's motion to suppress.