NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific</u> <u>Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

MIKOS CASSADINE SIMMONS,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12147
Trial Court No. 3AN-12-654 CR

O P I N I O N

No. 2613 — August 17, 2018

Appeal from the Superior Court, Third Judicial District, Anchorage, Jack W. Smith, Judge.

Appearances: Vikram N. Chaobal, Anchorage, for the Appellant. June Stein, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, and Allard and Wollenberg, Judges.

Judge MANNHEIMER.

On the evening of January 21, 2012, Mikos Cassadine Simmons was driving in Anchorage with his girlfriend and their child. An Anchorage police officer stopped Simmons's vehicle because its taillights were darkened and its license plate was partially obscured by snow.

The officer who made the stop, Chad Schaeffer, asked to see Simmons's driver's license. Simmons replied that he did not have his driver's license with him, but he told Officer Schaeffer his name, his date of birth, and his social security number, and he gave the officer his voter registration card. After Schaeffer returned to his patrol car and verified all of this information, he prepared to issue a citation to Simmons for driving without his driver's license in his possession.

However, while Officer Schaeffer was on the radio confirming Simmons's identity, a patrol sergeant, Jack Carson, informed him that Simmons was a dangerous person, and that he was "associated" with drugs and guns. Sergeant Carson told Officer Schaeffer not to return to Simmons's car until Carson could arrive on the scene to provide backup.

Schaeffer filled out the traffic citation, and then he waited for his sergeant to arrive. Several minutes later, Sergeant Carson arrived on the scene. Carson and Schaeffer walked up to Simmons's car. Carson greeted Simmons by name, and he asked if he could search Simmons's vehicle. Simmons said no. Sergeant Carson then directed Simmons to get out of his vehicle and submit to a pat-down search for weapons.

While Sergeant Carson was conducting this pat-down search, Officer Schaeffer positioned himself alongside Simmons's vehicle so that he could keep an eye on Simmons's girlfriend. According to Schaeffer's later testimony, he shined a flashlight into the vehicle and, on the floor of the vehicle, he observed a sandwich-sized plastic baggie with other smaller baggies inside it.

In the meantime, Sergeant Carson had completed his pat-down of Simmons, and he found no weapons. Nevertheless, Carson then directed Simmons's girlfriend to get out of the car, so that the officers could search the entire passenger compartment for weapons. When Sergeant Carson looked inside Simmons's car, he observed the same baggies that Officer Schaeffer had seen. Carson surmised that the baggies contained

heroin, given the appearance of the substance in the baggies and the way they were packaged. The officers then arrested Simmons, and the substance was later confirmed to be heroin.

Simmons's attorney moved to suppress the evidence found in Simmons's car, alleging that the police had improperly extended the traffic stop. The superior court denied this suppression motion, and Simmons was ultimately convicted of fourth-degree controlled substance misconduct (possession of heroin), former AS 11.71.040(a)(3)(A) (as of 2012).

In this appeal, Simmons renews his argument that the police unlawfully extended the traffic stop, and that the evidence pertaining to the bag of heroin should have been suppressed. For the reasons explained in this opinion, we agree.

*The constitutional limits on a routine traffic stop, and why we conclude that those limits were violated in Simmons's case*

This Court has held that police officers conducting a traffic stop have the authority to order the driver to get out of the vehicle if the officer's action is reasonably related to concerns for the officer's safety while the officer is interacting with the driver during the stop. *See Erickson v. State*, 141 P.3d 356, 359 (Alaska App. 2006) (upholding an officer's authority to order a passenger to get out of the car based on these same concerns). [1]

---

[1] Compare *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), holding that police officers have a broader authority under the United States Constitution to order a driver to get out of the vehicle, regardless of the specific circumstances. We have not yet decided whether, under the Alaska Constitution, police officers conducting a traffic stop have this same broad authority.

But as the United States Supreme Court emphasized in *Rodriguez v. United States*, __ U.S. __, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015), routine traffic stops are analogous to the kind of investigative stops authorized by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). That is, in a routine traffic stop, a police officer is authorized to conduct a limited seizure for a limited purpose.

Because the officer's authority to detain a motorist during a traffic stop is limited by the purpose of the stop, that authority lasts only for the time it takes, or reasonably should take, for the officer to accomplish the purpose or "mission" of the traffic stop — *i.e.*, the time needed for the officer to address the traffic violation that warranted the stop, and to attend to any related traffic safety concerns. *Rodriguez*, 135 S.Ct. at 1614-15. "Authority for the seizure thus ends when tasks related to the traffic infraction are — or reasonably should have been — completed." *Rodriguez*, 135 S.Ct. at 1614.

Thus, in *Rodriguez*, the Supreme Court held that it was unlawful for the police to require a driver to wait until a drug-sniffing dog could be brought to the scene of the traffic stop, when the police had no reasonable suspicion of a drug violation. *Id.* at 1616. Compare this Court's decision in *Brown v. State*, 182 P.3d 624 (Alaska App. 2008), where we questioned whether, under the Alaska Constitution, an officer conducting a routine traffic stop is even allowed to *ask* the driver for permission to conduct a search if the search is unrelated to the basis for the stop, and if the officer's request is not otherwise supported by a reasonable suspicion of criminality. *Id.* at 626, 633-34.

In Simmons's case, the officer conducting the traffic stop (Officer Schaeffer) was apparently ready to issue a citation and allow Simmons to leave, thus concluding the traffic stop. However, Simmons's case became more complicated when

Schaeffer's supervisor told him to wait for backup to arrive, due to alleged safety concerns.

We need not decide whether these safety concerns were sufficiently substantial to justify Officer Schaeffer's decision to wait for backup before serving the citation on Simmons. Even if we assume that Schaeffer was justified in prolonging the traffic stop for this reason, there was no justification for what ensued when Sergeant Carson arrived on the scene: no justification for ordering Simmons to get out of his car and submit to a search for weapons.

The State contends that these additional intrusions on Simmons's privacy were justified by concerns for officer safety. But as the Supreme Court clarified in *Rodriguez*, actions taken in the name of protecting officer safety must stem "from the mission of the [traffic] stop itself." [2] Just as the federal constitution prohibits the police from engaging in "detours from that mission", it likewise prohibits the police from engaging in "safety precautions taken in order to facilitate such detours." [3] But that is what happened in Simmons's case.

According to the record in this case, Simmons was cooperative in his dealings with Officer Schaeffer, and Simmons gave no indication that he posed a danger to the officer. And by the time Sergeant Carson arrived on the scene, the purpose of the traffic stop was all but accomplished: Officer Schaeffer had verified Simmons's identity, had written the citation, and was simply waiting to deliver the citation to Simmons — at which time, Simmons would be free to leave.

These circumstances do not support the conclusion that the police searched Simmons for weapons so that they could protect themselves during the traffic stop.

---

[2]  *Rodriguez*, 135 S.Ct. at 1616.

[3]  *Ibid.*

Rather, the police artificially extended the traffic stop so that they could search Simmons for weapons. Neither *Rodriguez* nor *Erickson* authorize this. [4]

*Conclusion*

The superior court should have granted Simmons's suppression motion. Accordingly, the judgement of the superior court is REVERSED.

---

[4] Compare *State v. Kjolsrud*, 371 P.3d 647, 651 (Ariz. App. 2016), where the court held that a police officer acted unlawfully when, at the very end of a traffic stop, instead of simply delivering the citation to the driver, the officer ordered the driver to get out of the vehicle so that the officer could engage the driver in further questioning.