NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MARKITA MCCOY, *Appellant.*

No. 1 CA-CR 18-0029
FILED 11-20-18

Appeal from the Superior Court in Mohave County
No. CR-2016-01012
The Honorable Billy K. Sipe Jr., Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

**¶1**   Markita McCoy appeals her convictions and sentences for transportation of narcotic drugs for sale, possession of narcotic drugs for sale, transportation of dangerous drugs for sale, possession of dangerous drugs for sale, possession of marijuana, and possession of drug paraphernalia. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND[1]

**¶2**   While conducting a routine traffic stop on the right shoulder of the interstate, a trooper noticed a blue car approaching in the adjacent lane. The trooper walked toward his fully marked patrol vehicle, with its blue and red emergency lights flashing, and motioned for the approaching car to move over into the unoccupied lane. Despite the trooper's gestures, the blue car remained in the its lane and passed by without decelerating. Because the vehicle drove very close to the shoulder, the trooper felt compelled to retreat, taking evasive action to ensure his safety.

**¶3**   After he completed the traffic stop already in progress, the trooper "chased down" and pulled over the blue car. When the trooper contacted the vehicle's two occupants, the driver, McCoy, provided an Ohio driver's license and apologized for failing to comply with the trooper's request to move over.

**¶4**   Observing that both occupants appeared "very nervous," the trooper asked McCoy to step out of the vehicle. As he proceeded to draft a written warning, the trooper engaged McCoy in "casual conversation," asking about the nature of her trip. In response to the trooper's questions,

---

[1]  In reviewing the denial of a motion to suppress, we consider only the evidence presented at the suppression hearing and view that evidence in the light most favorable to sustaining the superior court's decision. *State v. Mendoza-Ruiz*, 225 Ariz. 473, 474, ¶ 2, n.1 (App. 2010).

McCoy stated that she and the passenger had flown from Toledo to Las Vegas for "fun," stayed at the MGM hotel, and acquired a rental vehicle to drive back to Ohio. As the trooper continued speaking with McCoy, he reviewed the vehicle's rental contract and noted that a third party had rented the vehicle and no other drivers were listed. When asked about her omission from the rental agreement, McCoy explained that the absent third party "was the one with all the money."

¶5 To lighten the tone of the conversation, at some point, the trooper also asked McCoy whether she, as a resident of Ohio, could explain the origin of the phrase "holy Toledo." McCoy answered, "I don't do drugs or anything like that." Believing this unprompted reference to drugs—as well as the circumstances surrounding the rental vehicle and McCoy's faltering voice, averting eyes, and overall escalating nervousness—indicated possible criminal activity, the trooper checked the vehicle identification number. As he did so, the trooper questioned the passenger, who stated that she and McCoy had driven to Las Vegas "for fun," stayed at a small, unidentified hotel, left their vehicle in Nevada, and rented a car for the drive back to Ohio. Based on the substantial discrepancies between McCoy's account and the passenger's statements, the trooper concluded something "nefarious" was afoot.

¶6 Upon issuing the written warning to McCoy and returning her documents, the trooper asked whether there was anything illegal in the rental car. Denying the presence of any contraband, McCoy invited the trooper to search the vehicle. When the trooper handed her a written consent form a few moments later, however, McCoy rescinded her consent to a search.

¶7 At that point, the trooper asked McCoy whether she was willing to wait for a drug dog and she consented. After the trooper called for a canine unit, he started to "press" McCoy, telling her that he knew there were drugs in the car and asking her to be honest. In response, McCoy admitted that she had marijuana in her purse and acknowledged that there were other drugs in the vehicle, though explaining she did not know the type of drugs in the car because she had been paid to transport them for someone else. After McCoy's confession, the trooper arrested the women and searched McCoy's purse and the rental vehicle, seizing marijuana, methamphetamine, and Fentanyl.

¶8 A jury found McCoy guilty as noted above and the superior court sentenced her to an aggregate term of ten years' imprisonment. McCoy timely appealed, and we have jurisdiction pursuant to Arizona

Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶9**        McCoy contends the superior court improperly denied her motion to suppress. Asserting the trooper lacked reasonable suspicion to detain her once he had issued the written warning, McCoy argues the trooper's continued questioning, without her consent, unlawfully expanded the scope of the traffic stop.

**¶10**        Before trial, McCoy moved to suppress all statements she made after the trooper issued the warning and all evidence seized during the trooper's subsequent search. At the evidentiary hearing held on the motion, the trooper testified that he did not delay the traffic stop to converse with McCoy and the passenger, but timely drafted the written warning as they spoke. According to the trooper, once he returned McCoy's documents and issued the warning, he "simply kep[t] talking" and "asking her questions." In response, McCoy never expressed a desire to leave, although the trooper acknowledged that had she attempted to do so, he "[a]bsolutely" would have detained her because he believed she was involved in "drug activity."

**¶11**        After considering the evidence presented, the superior court found that McCoy's interaction with the trooper was consensual once the purpose of the traffic stop concluded. Accordingly, the court found it was unnecessary to determine whether the trooper had reasonable suspicion to detain McCoy and denied the motion to suppress.

**¶12**        We review the denial of a motion to suppress evidence for an abuse of discretion, *Brown v. McClennen*, 239 Ariz. 521, 524, ¶ 10 (2016), but review *de novo* the superior court's ultimate legal conclusion that a search and seizure "complied with the dictates of the Fourth Amendment," *State v. Valle*, 196 Ariz. 324, 326, ¶ 6 (App. 2000). In doing so, we defer to a superior court's determination of witnesses' credibility, *see Mendoza-Ruiz*, 225 Ariz. at 475, ¶ 6, and uphold the court's ruling if it is legally correct for any reason, *State v. Huez*, 240 Ariz. 406, 412, ¶ 19 (App. 2016).

**¶13**        The federal and state constitutions protect individuals against unreasonable searches and seizures, U.S. Const. amend. IV; Ariz. Const. art. 2, § 8, and "any evidence collected in violation" of these provisions "is generally inadmissible in a subsequent criminal trial," *State v. Valenzuela*, 239 Ariz. 299, 302, ¶ 10 (2016). Although a stop of a motor vehicle constitutes a seizure, it is less intrusive than an arrest, and therefore

"officers need only possess a reasonable suspicion that the driver has committed an offense to conduct a stop." *State v. Kjolsrud*, 239 Ariz. 319, 322, ¶ 9 (App. 2016) (internal quotation omitted). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop," and "[a]uthority for the seizure thus ends" once the officer has returned the driver's documents and issued a warning or citation. *Rodriguez v. United States*, 135 S.Ct. 1609, 1614 (2015); *see also State v. Teagle*, 217 Ariz. 17, 23, ¶ 21 (App. 2007). At that point, "the driver must be permitted to proceed on his way without further delay or questioning" unless: (1) the encounter between the driver and the officer becomes consensual, or (2) during the encounter, the officer develops a reasonable and articulable suspicion that criminal activity is afoot. *Teagle*, 217 Ariz. at 23, ¶ 22 (quoting *United States v. Mendez*, 118 F.3d 1426, 1429–30 (10th Cir. 1997)); *see also Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("An officer's inquiries into matters unrelated to the justification for the stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.").

¶14         Here, McCoy does not dispute that the initial traffic stop was reasonable. Instead, she argues that the trooper unlawfully prolonged the detention by asking additional questions after issuing the warning. Because an extended detention, beyond the time reasonably required to complete the traffic-related purpose of a stop, is unconstitutional absent an independent basis, the first question before us is whether this stop became a consensual encounter. *See Kjolsrud*, 239 Ariz. at 322, 325–26, ¶¶ 10, 21–24; *see also Florida v. Royer*, 460 U.S. 491, 498, 500 (1983) (explaining "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop," and a motorist may not be detained "even momentarily without reasonable, objective grounds for doing so").

¶15         To determine whether this encounter was consensual or amounted to an additional seizure, we consider the totality of the circumstances and whether a reasonable person under those circumstances would have felt free to leave. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) ("[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."). A traffic stop may become consensual once an officer returns a driver's documents and issues a warning or citation, so long as the officer proceeds without an "overbearing show of authority." *State v. Box*, 205 Ariz. 492, 498–99, ¶¶ 21–22 (App. 2003), *abrogated in part on other grounds by*

*Rodriguez*, 135 S.Ct. at 1615–16. Factors that indicate an additional seizure include: (1) the threatening presence of several officers, (2) the display of a weapon by an officer, (3) some physical touching or restraint, and (4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Mendenhall*, 446 U.S. at 554. Absent such evidence, "otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Id.* at 555. Moreover, when assessing the "Fourth Amendment implications of police conduct," an officer's "subjective intent" is relevant "only to the extent" that it "has been conveyed to the person confronted." *Michigan v. Chesternut*, 486 U.S. 567, 575, n.7 (1988).

¶16        In this case, there is no evidence that the trooper threatened McCoy, touched or restrained her person, displayed a weapon, used language or an authoritative tone that compelled her compliance, or otherwise exhibited overbearing authority. Immediately upon returning her documents and issuing the warning, the trooper asked McCoy whether there was contraband in the vehicle and she responded by inviting the trooper to search the rental car. Moments later, McCoy rescinded her consent to a search of her vehicle, but then immediately agreed to wait for a canine unit. On this record, the trooper never communicated, through words or actions, his subjective intent to detain McCoy if she attempted to leave, and never exhibited overbearing authority compelling her compliance. Therefore, the superior court did not abuse its discretion by denying McCoy's motion to suppress after finding that McCoy's brief, post-citation encounter with the trooper was consensual. *See State v. Acinelli*, 191 Ariz. 66, 69–70 (App. 1997) (concluding the defendant was free to leave after the officer returned his documents and explained the issued citations were warnings, and therefore the officer's continued "dialogue with the defendant" was lawful and the defendant's consent to a search of his vehicle was valid).

## CONCLUSION

¶17        For the foregoing reasons, we affirm the convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:        JT