NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JAMES EDWARD STEWART, *Appellant*.

No. 1 CA-CR 21-0419
FILED 5-17-2022

Appeal from the Superior Court in Yavapai County
No. V1300CR202080462
The Honorable Thomas K. Kelly, Judge *Pro Tempore*
The Honorable Michael Bluff, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael F. Valenzuela
*Counsel for Appellee*

Law Office of Nicole Countryman, Phoenix
By Nicole Countryman
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Samuel A. Thumma joined.

---

**B R O W N**, Judge:

¶1　　　　James Edward Stewart appeals his convictions and sentences for transportation of dangerous drugs for sale and possession of drug paraphernalia. He argues the superior court erred by denying his motion to suppress drug evidence seized from his car after a traffic stop, asserting the police officer lacked reasonable suspicion for the stop. He also contends the court erred by failing to instruct the jurors on the lesser-included offense of possession of dangerous drugs. For the following reasons, we affirm.

### BACKGROUND

¶2　　　　Stewart was driving a black four-door BMW through Cottonwood when a police officer pulled him over for driving with a suspended license. After the officer arrested Stewart for the violation, a drug-detecting dog alerted to the presence of drugs in the car. The resulting search revealed more than 48 grams of methamphetamine and empty baggies inside a canister, commonly known as a "hide-a-can."

¶3　　　　During a recorded police interview following *Miranda*[1] warnings, Stewart initially denied knowledge of the contraband but eventually admitted he had purchased two ounces of methamphetamine in Tucson for $450 and brought 50 grams with him on his return trip to Cottonwood that day. Stewart then described the specific location where he purchased the drugs and the person who had arranged the deal. Stewart explained that he began selling methamphetamine when he was unable to find a job. He planned to deliver some of the methamphetamine to his mother and had prepared a "teener"—approximately 1/16 of one ounce—to sell to a buyer. He further revealed that he had hidden the yet-undetected teener under the sun visor. After Stewart disclosed the teener's location, the arresting officer returned to the car and found a baggie with two grams of methamphetamine under the visor.

---

[1]　　　　*Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

¶4        The State charged Stewart with transportation of dangerous drugs for sale, a class two felony, and possession of drug paraphernalia, a class six felony.  Before trial, Stewart moved to suppress the drug evidence, asserting the officer lacked reasonable suspicion for the traffic stop.  At the suppression hearing, the officer testified he learned from a detective that a drug-trafficking task force was investigating a four-door black BMW based on its involvement in recent drug sales.  The officer was also informed that the BMW was registered to a female in Tucson.

¶5        When the officer saw Stewart driving the BMW matching the description, he contacted a member of the task force, who reported they were investigating "James Stewart," a white male from Michigan.  When Stewart got out of the BMW and walked into the grocery store, the officer ran record checks and learned that Stewart did not possess an Arizona driver's license.  The records search also revealed that Stewart's Michigan driver's license was suspended and "had the exact same address as the woman on the [BMW's] registration."  Based on the matching addresses, the officer determined he "probably ha[d] the right vehicle."  When Stewart eventually drove away in the BMW, the officer initiated the traffic stop and arrested him for driving on a suspended license.

¶6        The superior court denied the suppression motion, finding the officer possessed reasonable suspicion that Stewart was the BMW's driver.  In its ruling, the court explained that "the key point . . . was the connection of the officer verifying that the Defendant's address on his license was the same address as the registered owner in Tucson . . . . [T]hat is a significant connection between the unidentified white male driver of the BMW and this Defendant."

¶7        At trial, Stewart testified that he had no knowledge of anything illegal in the BMW.  He denied that he had driven the BMW from Tucson that day, despite what he had told the officers.  He explained that his girlfriend, who was a drug dealer, had arrived at his mother's home "out of the blue" and he borrowed her car to go to the grocery store. Stewart asserted that he lied to the officers when he admitted to the crimes, claiming they promised him leniency if he cooperated.  He also said he refrained from telling the officers the drugs belonged to his girlfriend because he did not want to get her in trouble.  When asked how he knew about the hidden teener, he said he had merely guessed because his girlfriend had previously concealed drugs in that location.

¶8        In discussing the final jury instructions, Stewart withdrew his previous request to instruct the jurors on the lesser-included offense of

possession of methamphetamine, and thus the superior court instructed the jurors only on the charged offenses. The jury found Stewart guilty as charged. The court sentenced him to concurrent prison terms totaling eight years. Stewart timely appealed, and we have jurisdiction under A.R.S. § 12-120.21(A)(1).

**DISCUSSION**

### A.      Reasonable Suspicion

**¶9**      Stewart argues the superior court erred by refusing to suppress the drug evidence, repeating his contention that the arresting officer lacked reasonable suspicion to stop him. In reviewing a suppression ruling, we consider only the evidence presented at the suppression hearing and view the facts in a light most favorable to upholding the order. *State v. Adair*, 241 Ariz. 58, 60, ¶ 9 (2016). We defer to the superior court's factual findings but review de novo mixed questions of law and fact as well as the court's ultimate legal conclusions. *State v. Teagle*, 217 Ariz. 17, 22, ¶ 19 (App. 2007).

**¶10**      The United States and Arizona Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Ariz. Const. art. II, § 8; *State v. Allen*, 216 Ariz. 320, 323, ¶ 9 (App. 2007). Courts must exclude from a criminal trial all evidence obtained in violation of those prohibitions, absent a valid exception. *State v. Peoples*, 240 Ariz. 244, 247, ¶ 9 (2016).

**¶11**      Because traffic stops are less intrusive than arrests, police officers "'need only possess a reasonable suspicion that the driver has committed an offense' to conduct a stop." *State v. Kjolsrud*, 239 Ariz. 319, 322, ¶ 9 (App. 2016) (citation omitted). "Reasonable suspicion exists if, under the totality of the circumstances, an officer developed a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* at 323, ¶ 15. Reasonable suspicion must be more than an incomplete hunch but is "considerably less than proof of wrongdoing by a preponderance of the evidence" and demands only a "minimal level of objective justification." *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Teagle*, 217 Ariz. at 23–24, ¶ 25. In assessing whether reasonable suspicion exists, courts examine collectively all relevant factors, even if each may individually have an innocent explanation. *Teagle*, 217 Ariz. at 24, ¶ 25. Under Arizona law, driving on a suspended license is a class one misdemeanor. *See* A.R.S. § 28-3473(A), (B).

¶12       The record supports the superior court's ruling that the stop was supported by reasonable suspicion.  After the officer noticed a BMW resembling the description given by the task force detectives, his subsequent investigation revealed that (1) the BMW's registered owner was a female with a Tucson address, (2) Stewart's physical description was consistent with the BMW driver's appearance, (3) Stewart lacked a valid driver's license, and (4) Stewart had the same residential address as the BMW's owner.  Given that the addresses directly linked Stewart to the BMW, these uncontested facts were sufficiently particularized for the officer to draw a reasonable inference that Stewart was driving the BMW with a suspended license.  *See State v. Nevarez*, 235 Ariz. 129, 133, ¶ 7 (App. 2014) (explaining officers are "not required to determine if an actual violation has occurred prior to stopping a vehicle for further investigation").  Accordingly, the superior court did not err in denying the suppression motion.

### B.       Lesser-Included Offense Instruction

¶13       Stewart also contends the superior court abused its discretion by not instructing the jurors on possession of methamphetamine as a lesser-included offense.  The State asserts Stewart invited any error by expressly asking the court not to give the instruction and is barred from now challenging its absence.[2]  Alternatively, the State argues Stewart has not shown the court fundamentally erred in failing to give the instruction. Because we conclude no error occurred, we need not determine the applicable standard of review on Stewart's claim.  *See State v. Diaz*, 223 Ariz. 358, 360, ¶ 11 (2010) ("Regardless of how an alleged error ultimately is characterized, . . . a defendant on appeal must first establish that some error occurred.").

¶14       Possession of dangerous drugs is a lesser-included offense of transporting dangerous drugs for sale, distinguished only by the additional for-sale element in the greater offense.  *State v. Cheramie*, 218 Ariz. 447, 449, 451, ¶¶ 10, 22 (2008).  Both crimes require proof of knowledge.  *See* A.R.S. § 13–3407(A)(1) ("A person shall not knowingly . . . [p]ossess or use a dangerous drug."); A.R.S. § 13–3407(A)(7) ("A person shall not knowingly . . . [t]ransport for sale . . . a dangerous drug.").

---

[2]       Stewart withdrew his prior request for the instruction based at least in part on his erroneous conclusion—one the superior court appeared to endorse—that simple possession is not a lesser-included offense of transporting dangerous drugs for sale.

**¶15**        A defendant is entitled to a lesser-included offense instruction if sufficient evidence supports giving the instruction. *State v. Wall*, 212 Ariz. 1, 4, ¶¶ 17–18 (2006).  Evidence is sufficient when a reasonable jury could find (1) the State failed to prove an element of the greater offense, and (2) the defendant committed only the lesser offense. *See id.* at ¶ 18.  To assess the sufficiency of the evidence in this context, we consider "whether the jury could rationally fail to find the distinguishing element of the greater offense."  *State v. Bearup*, 221 Ariz. 163, 168, ¶ 23 (2009) (citation and quotation omitted).  "As a practical matter, when a defendant asserts an all-or-nothing defense[,] . . . there will 'usually [be] little evidence on the record to support an instruction on the lesser included offenses.'"  *Wall,* 212 Ariz. at 6, ¶ 29 (citation omitted).  "When the record is such that defendant is either guilty of the crime charged or not guilty, the trial court should refuse a lesser included instruction."  *State v. Salazar*, 173 Ariz. 399, 408 (1992).

**¶16**        Here, the record discloses overwhelming evidence of Stewart's guilt on the charged offenses, including a video recording of his detailed confession.  Furthermore, a drug detective explained that the large quantity of methamphetamine and that the empty baggies indicated the seized drugs had been possessed for sale.  Conversely, Stewart's sole defense was lack of knowledge, asserting the police coerced him into falsely confessing, and he was, in fact, not aware the BMW contained any illegal items.  Given these circumstances, Stewart was either guilty of the charged crimes or he was innocent; therefore, a lesser-included offense instruction was not justified.  *See id.*

**¶17**        Nonetheless, Stewart contends he was entitled to the absent instruction because "if the jurors believed [him], they could have found him guilty of possession of dangerous drugs instead."  But to find Stewart guilty of simple possession, the jurors would have had to conclude he had knowledge of the car's illegal contents, which he unequivocally denied at trial.  Despite Stewart's contrary assertion on appeal, had the jurors credited his testimony, the result would have been a full acquittal rather than a simple-possession conviction.  And speculation that the jurors might have otherwise simply disbelieved parts of the State's case is not a sufficient reason to conclude the instruction was warranted. *Wall*, 212 Ariz. at 4, ¶ 18.  Accordingly, because no rational juror could have failed to find the distinguishing element of the greater offense, the court did not err in declining to instruct the jurors on simple possession.

**CONCLUSION**

¶18        We affirm Stewart's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:   AA