NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RONALD GREGORY ZUZZIO, *Appellant.*

No. 1 CA-CR 24-0162
FILED 04-03-2025

Appeal from the Superior Court in Mohave County
No. CR-2021-01458
The Honorable Douglas Camacho, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Phillip A. Tomas
*Counsel for Appellee*

Ramos Law Firm, Scottsdale
By Paul A. Ramos
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge D. Steven Williams joined.

_____

**P E R K I N S**, Judge:

**¶1**        Following his convictions for two drug-related offenses and a misconduct involving weapons charge, Ronald Gregory Zuzzio appeals the superior court's denial of his motion to suppress evidence seized from his car after a traffic stop. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**        Our review of the denial of Zuzzio's motion to suppress is limited to the evidence presented at the suppression hearing and we view the facts in the light most favorable to upholding the superior court's ruling. *State v. Wilson*, 237 Ariz. 296, 298, ¶ 7 (2015).

**¶3**        On December 13, 2021, around 11:19 p.m., an Arizona Department of Public Safety Trooper was stationed on Highway 66 in Kingman. While observing westbound traffic, the Trooper noticed a lone car traveling away from him and decided to follow it. The car exited the highway down a side road, made three "rapid" turns onto various streets, and then parked on the wrong side of a residential street. The Trooper testified that parking in this manner violated A.R.S. § 28-874.

**¶4**        Without activating his lights or siren, the Trooper parked behind Zuzzio, walked up to the driver's side window, and asked if Zuzzio was lost. Zuzzio said he was there visiting a friend, but when the Trooper asked who he was visiting, Zuzzio looked to his passenger ("Passenger") to answer the Trooper.

**¶5**        The Trooper then asked for Zuzzio and Passenger's identification. While Zuzzio searched for his license, the Trooper conducted a record check of the car and discovered it was a rental car. Zuzzio provided the Trooper a rental contract that showed the car was overdue, but claimed the agreement was old and that he had another day to return it. The Trooper allowed Zuzzio to call the rental car company ("Enterprise") to confirm the rental had been extended.

¶6         Zuzzio and Passenger gave the Trooper their identification and he conducted a record check on their names. The check revealed that Zuzzio had three active, nonextradition out-of-state warrants for his arrest and Passenger had two active warrants within Mohave County for her arrest.

¶7         The Trooper informed Passenger of her warrants, ordered her out of the car, and told her she was being detained. Passenger asked the Trooper to get her purse from the car. The Trooper told Zuzzio he was grabbing Passenger's purse and Zuzzio said "okay, go ahead." During this time, Zuzzio was still on the phone attempting to contact Enterprise to verify the rental car's return date.

¶8         While grabbing Passenger's purse, the Trooper observed a "cut pen or tooter" on the floorboard, a device "used for the smoking or inhalation of fentanyl, heroin or other narcotic pills." The Trooper found the tooter approximately one minute before Zuzzio confirmed the car's return date with Enterprise.

¶9         The Trooper arrested Zuzzio, searched the car, and found methamphetamine, fentanyl pills, and two firearms. Approximately 17 minutes passed between the initial contact and Zuzzio's arrest.

¶10        Zuzzio moved to suppress the evidence obtained from the search. The superior court denied the motion after an evidentiary hearing. A jury convicted Zuzzio of transportation of dangerous drugs for sale (methamphetamine), transportation of narcotic drugs for sale, and misconduct involving weapons. Zuzzio timely appealed and we have jurisdiction. A.R.S. §§ 12-120.21(A)(1), 13-4031, -4033(A).

## DISCUSSION

¶11        Zuzzio argues the superior court erred by denying his motion to suppress because the Trooper's observations were "wholly inadequate" to create reasonable suspicion of criminal activity. And, even if the Trooper had reasonable suspicion to detain him, Zuzzio argues the Trooper violated his Fourth Amendment rights by impermissibly prolonging the detention.

¶12        We review the superior court's denial of a motion to suppress for an abuse of discretion, *Wilson*, 237 Ariz. at 298, ¶ 7, but review *de novo* whether reasonable suspicion exists to support an investigatory traffic stop, *State v. Majalca*, 251 Ariz. 325, 328, ¶ 11 (App. 2021).

3

¶13        An officer who has observed a traffic violation has reasonable suspicion to initiate a traffic stop. *State v. Kjolsrud*, 239 Ariz. 319, 322, ¶ 9 (App. 2016). An investigatory traffic stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *State v. Teagle*, 217 Ariz. 17, 23, ¶ 21 (App. 2007). Ordinary inquiries incident to traffic stops include checking the driver's license and inspecting the car's registration and proof of insurance. *Kjolsrud*, 239 Ariz. at 323, ¶ 11. "Once an officer conducting a routine traffic stop has confirmed that the driver has produced a valid license and proof of entitlement to operate the vehicle, the driver must be permitted to proceed on his way without further delay or questioning" unless the officer develops a reasonable suspicion of criminal activity during the stop. *Teagle*, 217 Ariz. at 23, ¶ 22.

¶14        The parties dispute whether the initial contact between the Trooper and Zuzzio was consensual. But the Trooper testified, and Zuzzio does not challenge, that the Trooper believed Zuzzio had committed a parking violation. Because this parking violation provided the Trooper reasonable suspicion to detain Zuzzio temporarily, *Kjolsrud*, 239 Ariz. at 322, ¶ 9, we need not analyze whether the initial encounter was consensual. We thus treat the encounter as a legal traffic stop.

¶15        And the Trooper did not impermissibly extend the stop in violation of the Fourth Amendment. He asked Zuzzio to produce a driver's license and the rental car agreement—both ordinary inquiries incident to traffic stops. *Id.* at 323, ¶ 11. Zuzzio's rental contract showed that the car was seven days overdue, but he told the Trooper the rental had been extended. The Trooper allowed Zuzzio to contact Enterprise to confirm the rental car was not overdue or stolen. *See Teagle*, 217 Ariz. at 23, ¶ 22 (a routine traffic stop includes confirmation of the driver's entitlement to operate the car). The Trooper had no control over how long it took for Zuzzio to contact Enterprise and confirm his lawful possession of the car, and there is no evidence that the Trooper could have obtained that information any sooner than Zuzzio did.

¶16        Before Zuzzio verified the car's return date, the Trooper saw the tooter on the car's floorboard, which gave him probable cause to believe the car contained drugs or drug paraphernalia. *See State v. Sisco*, 239 Ariz. 532, 535, ¶ 8 (2016) (probable cause exists when there is a fair probability that contraband or evidence of a crime is present). Because the Trooper gained probable cause of criminal activity within the scope of a legal traffic stop, the subsequent search of the car and seizure of evidence was lawful. *State v. Weinstein*, 190 Ariz. 306, 310 (App. 1997).

## CONCLUSION

**¶17** We affirm the superior court's denial of Zuzzio's motion to suppress.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR